IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALVIN BROWN, in his official capacity,<br>    490 L'Enfant Plaza<br>    Washington, D.C. 20594,<br><br>        *Plaintiff*,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States,<br>    1600 Pennsylvania Avenue, NW<br>    Washington, D.C. 20500,<br><br>JENNIFER HOMENDY, in her official capacity as Chairman of the National Transportation Safety Board,<br><br>and<br><br>NATIONAL TRANSPORTATION SAFETY BOARD,<br>    490 L'Enfant Plaza, SW<br>    Washington, D.C. 20594,<br><br>        *Defendants*. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1.  Defendant Donald J. Trump illegally removed Plaintiff Alvin Brown from his position as a member of the National Transportation Safety Board ("NTSB" or the "Board") and in doing so undermined the NTSB's historic independence and interfered with its statutorily mandated duties to investigate and report on certain aircraft accidents, highway accidents, railroad accidents, marine casualties, and transportation accidents that are catastrophic or recurring.

2. Congress enacted the Independent Safety Board Act of 1974 for the purpose of creating an independent NTSB that would serve as a bipartisan, multi-member, independent board of experts, not as a vehicle for any president's political agenda. Congress ensured the Board's independence by limiting the President's authority to remove Board members. The President may remove a Board member only for inefficiency, neglect of duty, or malfeasance in office. 49 U.S.C. § 1111(c). By mandating that no more than three of the five members be of the same political party and by staggering the members' five-year terms, Congress intended for the Board's work to be informed by a diversity of viewpoints. At the same time, the law ensures that the President can shape the composition of the Board by granting the President authority to appoint a new member each year, with the advice and consent of the Senate. *Id.* § 1111(b).

3. Plaintiff began his tenure as an NTSB Board Member when President Joe Biden nominated him in August 2022 and the Senate confirmed his nomination by voice vote on March 8, 2024, for a term expiring on December 31, 2026. President Biden appointed Plaintiff Brown as vice chair on December 20, 2024.

4. Congress did not grant the president authority to remove NTSB members at will but instead for inefficiency, neglect of duty, or malfeasance in office. The NTSB's structure, mission, and functions, along with the terms set for members, demonstrate Congress's intent to provide the Board with continuity, stability, and insulation from political pressure exerted by the president. Because the Board members perform predominantly quasi-legislative functions and quasi-judicial functions and do not exercise substantial or considerable executive power, these restrictions on the president's removal authority are constitutional.

5. When Defendant Trump directed Defendant National Transportation Safety Board to remove Plaintiff Brown from his position on May 5, 2025, he lacked cause to do so, and

therefore, Plaintiff Brown's removal was illegal. Defendant NTSB has prevented Plaintiff Brown from performing his duties as a member in the wake of his removal.

6. Defendant Trump's illegal removal of Mr. Brown, as carried out by Defendants Homendy and NTSB, has significant and damaging consequences for the work of the Board and its investigation and reporting of major transportation accidents and casualties.

7. Mr. Brown seeks declaratory relief against all Defendants and injunctive relief against Defendant NTSB to enable him to perform his duties as a Board member as a remedy for Defendants' harmful and illegal actions and to ensure that the NTSB can resume its congressionally mandated work as Congress intended.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

10. Plaintiff Alvin Brown is a Board member of the NTSB, confirmed by a voice vote of the United States Senate to a five-year term expiring December 31, 2026.

11. Defendant Donald J. Trump is sued in his official capacity as President of the United States. Defendant Trump resides at 1600 Pennsylvania Avenue, NW, Washington, D.C. 20500.

12. Defendant Jennifer Homendy is the Chairman of the National Transportation Safety Board and is sued in her official capacity.

13. Defendant National Transportation Safety Board is an independent federal agency headquartered in Washington, D.C., at 490 L'Enfant Plaza, SW, Washington, D.C. 20594.

## STATUTORY BACKGROUND

14. The NTSB is an independent government agency tasked with securing the safety of American transportation by investigating accidents, performing studies, issuing safety recommendations, and assisting the victims and survivors of transportation disasters.

15. The NTSB can be traced to the Air Commerce Act of 1926, when Congress vested the Department of Commerce with the responsibility to investigate aircraft accidents. That authority was later transferred to the Civil Aeronautics Board upon its creation in 1940. By 1967, Congress decided that transportation safety could be more effectively promoted by a single agency with a clearly defined mission rather than the piecemeal approach of having different entities for different modes of transportation and consolidated them all under the newly minted National Transportation Safety Board, within the newly-created Department of Transportation (DOT).

16. Seven years later, in 1974, Congress realized the NTSB needed independence and established NTSB as a separate entity outside of DOT or any other agency as set forth in the Independent Safety Board Act of 1974. Congress explained that the NTSB needed to be independent of the Department of Transportation and all other agencies in order to conduct independent accident investigations and formulate safety improvement recommendations that at times may be critical of agencies and their officials:

> (1) The National Transportation Safety Board was established by statute in 1966 (Public Law 89-670; 80 Stat. 935) as an independent Government agency, located within the Department of Transportation, to promote transportation safety by conducting independent accident investigations and by formulating safety improvement recommendations.
>
> (2) Proper conduct of the responsibilities assigned to this Board requires vigorous investigation of accidents involving transportation modes regulated by other agencies of Government; demands continual review, appraisal, and assessment of the operating practices and regulations of all such agencies; and calls for the making of conclusions and recommendations that may be critical of or adverse to any such agency or its officials. No Federal agency can properly perform such functions

unless it is totally separate and independent from any other department, bureau, commission, or agency of the United States.

Independent Safety Board of Act of 1974, Pub. L. No. 93-633, § 302, 88 Stat. 2156, 2166-67 (1975).

17. Consistent with its findings, Congress explicitly established the NTSB as an independent agency: "The National Transportation Safety Board is an independent establishment of the United States Government." 49 U.S.C. § 1111(a).

18. Congress structured the Board as what the Supreme Court has characterized as a "a traditional independent agency, run by a multimember board with a diverse set of viewpoints and experiences." *Seila Law LLC v. CFPB*, 591 U.S. 197, 205-06 (2020) (cleaned up). The board consists of five members "appointed by the President, by and with the advice of the Senate," and "[n]ot more than 3 members may be appointed from the same political party." 49 U.S.C. § 1111(b). At least three of the members must be "appointed on the basis of technical qualification, professional standing, and demonstrated knowledge in accident reconstruction, safety engineering, human factors, transportation safety, or transportation regulation." *Id.*

19. The members serve five-year terms. 49 U.S.C. § 1111(c). The terms are staggered so that each year the term of one member ends. Department of Transportation Act, Pub. L. 89-670, § 5(i), 80 Stat. 931, 936 (1966). When the term ends, the member may continue to serve until a successor is appointed and qualified. 49 U.S.C. § 1111(c).

20. The President may only "remove a member for inefficiency, neglect of duty, or malfeasance in office." *Id.*

21. The President designates a Chairman to the Board with the advice and consent of the Senate. 49 U.S.C. § 1111(d). The Chairman serves as the chief executive and administrative

officer of the Board. *Id.* § 1111(e). The President also designates a Vice Chairman. *Id.* § 1111(d). Both the Chairman and Vice Chairman serve three-year terms in those positions. *Id.*

22. Consistent with its status as a traditional independent agency, the NTSB primarily exercises quasi-legislative and quasi-legislative functions. It only exercises executive functions in the discharge of its quasi-legislative and quasi-judicial functions. Most of the NTSB's functions are quasi-legislative.

23. The NTSB describes itself as "an independent agency" whose "mission" since its 1967 creation "has been to determine the probable cause of transportation accidents and to formulate safety recommendations to improve transportation safety." NTSB, *What is the National Transportation Safety Board*, at 1, https://perma.cc/UZ9P-ENE9 (last visited June 3, 2025). The NTSB's primary function is to "investigate or have investigated" and "establish, the facts, circumstances and causes" of major accidents involving transportation, 49 U.S.C. § 1131(a)(1), including:

> all U.S. civil aviation accidents and certain public-use aircraft accidents; selected highway accidents; railroad accidents involving passenger trains or selected freight train accidents that result in fatalities or significant property damage; major marine accidents and any marine accident involving both a public and a nonpublic vessel; pipeline accidents involving fatalities, substantial property damage, or significant environmental damage; selected accidents resulting in the release of hazardous materials in any mode of transportation; and selected transportation accidents that involve problems of a recurring nature or are catastrophic.

*What is the National Transportation Safety Board*, at 1. The Board "shall report on the facts and circumstances of each accident investigated by it." 49 U.S.C. § 1131(e).

24. In addition, the Board issues an annual report to Congress about its work and periodic reports to Congress and other federal and state transportation safety agencies and conducts special studies and investigations about transportation safety. 49 U.S.C. §§ 1116-17.

25. Notably, as part of these investigatory, reporting, and recommending functions, the NTSB "has no regulatory or enforcement authority and does not investigate criminal activity." NTSB, *NTSB Accident Investigations: Information for survivors, families & friends*, https://perma.cc/WM6X-BKHG (last visited June 3, 2025). The NTSB has no authority to enforce any safety recommendations it makes.

26. The Board reviews on appeal certain certification decisions made by other agencies, such as the denial, amendment, modification, suspension, or revocation of certificates issued by the Federal Aviation Administration or Coast Guard. *See* 49 U.S.C. § 1133.

## FACTUAL ALLEGATIONS

27. Plaintiff Brown was nominated as an NTSB Member in August 2022 and renominated on January 23, 2023, by President Joe Biden. He was confirmed by the Senate by voice vote on March 8, 2024, to a term expiring on December 31, 2026. President Biden named Mr. Brown Vice Chair of the Board on December 20, 2024.

28. Prior to his appointment as a NTSB Member, Mr. Brown had a long and distinguished career in urban planning, public administration, and transportation as a public servant. He served as senior advisor to former Commerce Secretary Ron Brown, Vice President Al Gore's Senior Advisor for Urban Policy, and executive director of the White House Community Empower Board. He was the first-ever Black person elected as mayor of Jacksonville, Florida and served from 2011 to 2015. During his mayoral tenure, he served as Chair of the Port and Exports Council and Vice-Chair of the Transportation Committee for the United States Conference of Mayors. He also served as senior advisor for community infrastructure opportunities at the United States Department of Transportation.

29. On May 5, 2025, at 6:57 p.m., Mr. Brown received an email from Trent Morse, the Deputy Director of Presidential Personnel of the White House. The entire body of the email reads as follows:

> Alvin,
>
> On behalf of President Donald J. Trump, I am writing to inform you that your position on the National Transportation Safety Board is terminated effective immediately.
>
> Thank you for your service.
>
> Trent Morse
> Deputy Director
> Presidential Personnel

As the email reflects, Mr. Brown was not removed for inefficiency, neglect of duty, or malfeasance in office.

30. Defendants Homendy and NTSB cut off Mr. Brown's access to NTSB systems, email, and offices on May 6, 2025, and Mr. Brown has not been able to perform his duties as a Board Member since that date. Around the same time, the NTSB human resources office took other steps to effectuate Mr. Brown's removal, including informing Mr. Brown's staff that his employment was being terminated because of his removal; requiring Mr. Brown to return his equipment; and processing the federal personnel paperwork to officially document his departure.

## CLAIM FOR RELIEF

### Ultra Vires Action in violation of the Independent Safety Act of 1974
### 49 U.S.C. § 1111

31. Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

32. Plaintiff Brown is entitled to retain his role as an NTSB Member because he was appointed and confirmed to a term that was not scheduled to end until December 31, 2026.

33. Defendant Trump lacked authority to remove Plaintiff Brown prior to the expiration of his term. Under the Independent Safety Board Act of 1974, the President may only remove a member "for inefficiency, neglect of duty, or malfeasance in office." 49 U.S.C. § 1111(c).

34. In the email removing Mr. Brown, Defendant Trump did not allege that Mr. Brown had engaged in inefficiency, neglect of duty, or malfeasance in office. Thus, President Trump violated 49 U.S.C. § 1111(c) for ordering the removal of Mr. Brown without a showing of inefficiency, neglect of duty, or malfeasance in office. Defendants Homendy and NTSB violated 49 U.S.C. § 1111(c) by effectuating the removal and preventing Mr. Brown from exercising his duties as an NTSB member.

35. There is a substantial and continuing controversy between Plaintiff Brown and the Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that Mr. Brown is a Member of the NTSB.

36. Injunctive relief against Defendants Homendy and NTSB is necessary and appropriate to permit Mr. Brown to perform his duties as a Board Member.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

(a) Declare that the removal of Plaintiff Alvin Brown as a member of the National Transportation Safety Board was unlawful, in violation of the Independent Safety Board Act of 1974, 49 U.S.C. § 1111; that Plaintiff Brown remains a Member of the NTSB, having been appointed by the President and confirmed by the Senate to a term ending on December 31, 2026; and that he cannot be removed by the President prior to the expiration of his term absent inefficiency, neglect of duty, or malfeasance in office;

(b) Enjoin Defendants Homendy and the NTSB from blocking Plaintiff Brown's access to his office or in any way treating Plaintiff Brown as having been removed, from impeding in any way his ability to fulfill his duties as a Member of the NTSB, and from denying or obstructing his authority or access to any benefits or resources of the office;

(c) Direct Defendants Homendy and the NTSB and their subordinates, agents, and employees to provide Plaintiff Brown with access to the necessary government facilities and equipment so that he may carry out his duties during his term as a Member of the NTSB;

(d) Issue a writ of mandamus ordering Defendants Homendy and the NTSB to refrain from blocking Plaintiff Brown's access from his office or in any way treating Plaintiff Brown as having been removed, from impeding in any way his ability to fulfill his duties as a Member of the NTSB, from denying or obstructing his authority or access to any benefits or resources of the office, and requiring them to provide Plaintiff Brown with access to the necessary government facilities and equipment so that he may carry out his duties during his term as a Member of the NTSB; and

(e) Grant any other relief this Court deems appropriate.

Dated: June 4, 2025                           Respectfully submitted,

/s/ Victoria S. Nugent
Victoria S. Nugent (D.C. Bar No. 470800)
Cynthia Liao (CA Bar No. 301818)*
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 448-9090 (Nugent)
(202) 808-1982 (Liao)
vnugent@democracyforward.org
cliao@democracyforward.org

Jon M. Greenbaum (D.C. Bar No. 489887)
**JUSTICE LEGAL STRATEGIES PLLC**
P.O. Box 27015
Washington, D.C. 20038
(202) 601-8678
jgreenbaum@justicels.com

*Counsel for Plaintiff Alvin Brown*

*\* Pro hac vice motion forthcoming. Not admitted to practice law in the District of Columbia; practicing under the supervision of attorneys who are members of the DC Bar.*