# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ALVIN BROWN, in his official capacity,

   *Plaintiff*,

   v.

DONALD J. TRUMP, in his official capacity
as President of the United States; JENNIFER
HOMENDY, in her official capacity as
Chairman of the National Safety
Transportation Board; NATIONAL SAFETY
TRANSPORTATION BOARD,

   *Defendants*.

Case No. 1:25-cv-01764-DLF

**PLAINTIFF'S REPLY IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT /
OPPOSITION TO DEFENDANTS'
CROSS-MOTION FOR SUMMARY
JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

ARGUMENT ............................................................................................................2

   I.   The NTSB does not wield substantial executive power. ......................................3

     A.   NTSB's safety recommendations are just that: recommendations. .................3

     B.   NTSB's investigative function is quasi-legislative...........................................5

     C.   NTSB participates in international investigations under Annex 13 precisely because it is independent. .....................................................................................7

     D.   NTSB's role in post-accident family assistance does not constitute substantial executive power. ...................................................................................................10

     E.   NTSB's appellate function weighs in favor of more, not less, independence. .............12

   II.   Mr. Brown is entitled to declaratory and injunctive relief...............................14

     A.   Defendants misstate the law on declaratory relief and mischaracterize Plaintiffs' declaratory relief claim. ........................................................................................14

     B.   Defendants fail to rebut Plaintiffs' entitlement to injunctive relief ............................16

     C.   If an injunction is not available, the Court should grant a writ of mandamus ..............19

CONCLUSION ........................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Air Crash Over S. Indian Ocean*, 352 F. Supp. 3d 19 (D.D.C. 2018) ...................................8

*Aviel v. Gor*, No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025) ......................................17

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020) ..................................................12

*Brehm v. Marocco*, No. 1:25-cv-00660 (D.D.C. 2025) ...................................................................18

*\*Buckley v. Valeo*, 424 U.S. 1 (1976) ......................................................................................5, 6

*Clinton v. Jones*, 520 U.S. 681 (1997) .............................................................................................16

*Collins v. Yellen*, 594 U.S. 220 (2021) .......................................................................................5, 13

*Davis v. Billington*, 76 F. Supp. 3d 59 (D.D.C. 2014) ....................................................................18

*Dellinger v. Bessent*, 2025 WL 887518 (2025) ...............................................................................18

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975) ...............................................................5

*Farris v. Rice*, 453 F. Supp. 2d 76 (D.D.C. 2006) ..........................................................................18

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) .............................................................................15

*Garvey v. NTSB*, 190 F.3d 571 (D.C. Cir. 1999) ............................................................................12

*Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943) ...............................................14

*Greene v. McElroy*, 360 U.S. 474 (1959) ........................................................................................13

*Grundmann v. Trump*, 770 F. Supp. 3d 166 (D.D.C. 2025) .....................................................15, 16

*Harper v. Bessent*, No. 1:25-cv-01294, 2025 WL 2049207 (D.D.C. July 22, 2025) ...................15

*Harris v. Bessent*, 775 F. Supp. 3d 164 (D.D.C. 2025) ................................................13, 15, 16, 20

*Harris v. Bessent*, 2025 WL 2692048 (D.D.C. Sept. 22, 2025) ......................................................13

*\*Harris v. Bessent*, No. 25-5057, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) ............................17

*Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155 (7th Cir. 1998) ..........................................................18

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) ................................................3, 5, 18

*Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427 (2025) ..................................................3

*LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, 784 F. Supp. 3d 1 (D.D.C. 2025) ..........................20

*Macauley v. Waterman S.S. Corp.*, 327 U.S. 540 (1946) ......................................................14

*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023) .........................................................13

*Marbury v. Madison*, 5 U.S. 137 (1803) ...........................................................................16

*McGrain v. Daugherty*, 273 U.S. 135 (1927) .....................................................................5

*Morrison v. Olson*, 487 U.S. 654 (1988) ......................................................................2, 13

*Myers v. United States*, 272 U.S. 52 (1926) ....................................................................17

*Sampson v. Murray*, 415 U.S. 61 (1974) .........................................................................18

*Samuels v. Mackell*, 401 U.S. 66 (1971) .....................................................................14, 15

*In re Sawyer*, 124 U.S. 200 (1988) ...............................................................................16

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) ................................................................2, 12

*Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023) ...........................................................17

*Slaughter v. Trump*, No. 25-5261, 2025 WL 2551247 (D.C. Cir. Sept. 2, 2025) ........................17

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) .......................................................15, 17, 20

*Trump v. Boyle*, 145 S. Ct. 2653 (2025) .........................................................................13

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) .......................................................................16

*Trump v. Slaughter*, Nos. 25A264, 25-332, 2025 WL 2692050 (2025) .................................13, 17

*Trump v. Wilcox*, 145 S. Ct. 1415 (2025) .................................................................13, 17, 19

*United States v. Collins*, No. 09-cv-6473, 2009 WL 5058813
   (W.D.N.Y. Sept. 17, 2009).......................................................................................12

*United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304 (1936).......................................9

*United States v. Providence J. Co.*, 485 U.S. 693 (1988) .....................................................6

*White v. Berry*, 171 U.S. 366 (1898) ........................................................................................16

*\*Wiener v. United States*, 357 U.S. 349 (1958) .....................................................................14

*Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. 2025) ......................................................16, 20

*Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1 (2015) ....................................................9

## STATUTES

22 U.S.C.
    § 5513 ................................................................................................................................9

28 U.S.C.
    § 516 ..................................................................................................................................6
    § 2201(a) ..........................................................................................................................15

49 U.S.C.
    § 115 ..................................................................................................................................7
    § 1111(c) .........................................................................................................1, 2, 9, 10, 14
    § 1113(a)(4) .......................................................................................................................6
    § 1135 ................................................................................................................................3
    § 1136(a)(1) .....................................................................................................................10
    § 1136(a)(2) .....................................................................................................................11
    § 1136(b) ..........................................................................................................................11
    § 1136(d)(1) .....................................................................................................................10
    § 1136(e) ..........................................................................................................................10
    § 1136(g)(2) .....................................................................................................................11
    § 1139(a)(2) .....................................................................................................................11
    § 1151 .......................................................................................................................6, 7, 11
    § 1151(c) .........................................................................................................................7, 8
    § 1155(a) ............................................................................................................................6
    § 40104 ..............................................................................................................................9

FAA Act of 1958, § 1007(a)-(b), 72 Stat. 731 (1958) ................................................................7

Pub. L. No. 103-272, 108 Stat. 745 (1994) ...............................................................................6

## REGULATIONS

49 C.F.R.
    § 831.22(b)(1) ...................................................................................................................8

# OTHER AUTHORITIES

FEMA, *Assistance for Governments and Private Non-Profits After a Disaster* (last updated Aug. 8, 2025), https://perma.cc/6BLV-B5KL...............................................................10

FEMA, *Assistance for Housing and Other Needs* (last updated Aug. 7, 2025), https://perma.cc/LL5V-R9BH ....................................................................................10

H.R. Rep. No. 104-793 (1996) ..................................................................................10, 11

*ICAO, *Annex 13 to the Convention on Int'l Civ. Aviation: Aircraft Accident & Incident Investigation* (13th ed. 2024), https://perma.cc/HVN9-MT49 ..................................7

*ICAO, *Manual of Aircraft Accident and Incident Investigation (Doc 9756) Part I: Organization and Planning* (2d ed. 2015), https://perma.cc/6GX7-WVNE ...................8

Kim Christensen, *Kobe Bryant crash renews battle over rejected safety regulations*, L.A. Times (Feb. 2, 2020), https://perma.cc/WWY2-5C6R..........................................4

Nominations, Congress.gov, *PN416-1—Jeffrey Anderson—Department of State*, https://perma.cc/3DSU-X6UW ....................................................................................9

NTSB, *Annual Report to Congress* (2024), https://perma.cc/X3WU-9YZB ..................4

NTSB, *DCA25MA108: Aviation Investigation Preliminary Report* (2025), https://perma.cc/2UF5-YX72 ....................................................................................4

NTSB, *Fiscal Year 2026 Budget Request* (May 30, 2025), https://perma.cc/HTP5-F65F..............4

NTSB, *NTSB's Role in Foreign Aviation Investigations* (updated June 12, 2025), https://perma.cc/BZ3S-WTAD ....................................................................................8

Order 2014-02-20, *In re Asiana Airlines, Inc.*, No. OST-2014-0001 (DOT Feb. 25, 2014), https://perma.cc/3XUV-WULJ ....................................................................11

S. Comm. on Homeland Sec. & Gov't Affs., 118th Cong., *U.S. Government Policy and Supporting Positions* (Comm. Print Nov. 12, 2024), https://perma.cc/K5V3-4YJF ..............9

*The Attorney General's Role as Chief Litigator for the United States*, 6 Op. O.L.C. 47 (1982).....6

## INTRODUCTION

When airplanes crash or ships run into bridges, the National Transportation Safety Board (NTSB) investigates such accidents for the sole purpose of suggesting safety improvements to prevent future accidents. The public trusts the NTSB to do its job, which may include being critical of other federal agencies, with objectivity and thoroughness. Defendants have provided no good reason why this system must be undermined by making NTSB members removable at will. The NTSB is structured such that every President is able to form a majority of his own political party on the Board, while the Board is still bipartisan. The NTSB's functions are also designed such that it does not exercise substantial executive power. The NTSB cannot compel anyone to follow its recommendations or even to respond to them. Like Congress, the NTSB can issue subpoenas in support of its investigations. But it cannot enforce them, nor can it pursue any other civil action in court unless the Department of Justice (DOJ) agrees to do so on its behalf.

Grasping at straws, Defendants try to argue that NTSB members must be removable at will because the NTSB assists in international investigations under Annex 13 of the Chicago Convention, but they ignore that the NTSB participates precisely because Annex 13 calls for a signatory state's accident investigation authority to be independent and able to withstand political pressure. Defendants also try to compare the NTSB in its post-accident family assistance role to FEMA, but by statute, the NTSB's role is mainly informational. It neither directly provides assistance nor funds it; the airlines do and they are regulated by the Department of Transportation (DOT), not NTSB. Defendants recognize that the administrative appeals heard by the NTSB affect the livelihoods of pilots and other appellants before them, but fail to recognize that appellants' due process rights include the right to impartial adjudicators, which would be undermined if the NTSB members were subject to at-will removal.

Defendants do not dispute that President Trump violated 49 U.S.C. § 1111(c) by firing Mr. Brown without cause. Thus, if the statute is constitutional, the Court should grant injunctive and declaratory relief. Defendants' remedial arguments are unavailing. Contrary to Defendants' argument, declaratory relief is available and should be awarded here even if injunctive relief is not.

Regarding injunctive relief, Defendants' contention that Plaintiff has not suffered irreparable harm and that back pay is an adequate remedy at law is contrary to D.C. Circuit precedent. Regarding the balance of harms, Defendants' reliance on the Supreme Court's stay order in *Wilcox v. Trump* is misplaced. There, the Court weighed harms without finding a violation first, whereas this Court would only weigh the harms after finding that the President has no authority to remove Mr. Brown without cause. In that case, then there would be little if any harm to the government if Mr. Brown's illegal removal were nullified. Defendants' position thus overstates the harms to the government. Defendants also fail to address the harm to the public interest of losing the independence of a body that investigates major accidents to recommend safety improvements to prevent future accidents.

## ARGUMENT

Defendants do not dispute that President Trump violated 49 U.S.C. § 1111(c) by firing Mr. Brown without cause. *Compare* Pl.'s MSJ 11, ECF No. 17-1 (arguing that the President violated § 1111(c)), *with* Defs.' Opp. 11, ECF No. 19-1 (no response). Defendants dispute only whether § 1111(c) is constitutional.

49 U.S.C. § 1111(c) is constitutional because the NTSB's structure and functions are such that at-will removal is not "essential to the President's proper execution of his Article II powers." *Morrison v. Olson*, 487 U.S. 654, 691 (1988). The NTSB is a "multimember expert agenc[y] that do[es] not wield substantial executive power." *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020) (describing *Humphrey's Executor* exception). The parties agree that NTSB is a multimember board whose members are supposed to be balanced on partisan lines and to serve staggered terms, like the FTC in *Humphrey's Executor*. *See* Defs.' Opp. 13 n.5. The parties also agree on many of the functions that the NTSB performs. However, the parties disagree on whether the NTSB's performance of those functions constitutes an exercise of substantial executive power. Contrary to Defendants' efforts to portray the NTSB otherwise, the NTSB's functions are quasi-legislative and quasi-judicial and it does not wield substantial executive power.

I.       **The NTSB does not wield substantial executive power.**

A.  **NTSB's safety recommendations are just that: recommendations.**

The NTSB's primary function is to investigate accidents to make safety recommendations to prevent future accidents. Neither its findings regarding the probable cause of the accidents nor its recommendations are binding on anyone. It has no authority to compel private parties or other government agencies to follow its findings or recommendations. Making non-binding recommendations is not an exercise of substantial executive power. *Cf. Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427, 2443 (2025) (noting that, before 2010, members of the Preventive Services Task Force did not "exercise significant governmental authority" as "an advisory body" that "made only non-binding recommendations")

Defendants do not dispute the non-binding nature of NTSB's recommendations. They contend, however, that NTSB's provision of recommendations is nevertheless "executive and substantial" because Congress requires the Department of Transportation (DOT) to respond in writing to NTSB's recommendations. Defs.' Opp. 17. Not so. The response requirement only further highlights the quasi-legislative nature of NTSB's recommendations. Congress directed that DOT respond in writing and that both the recommendations and responses be included in the NTSB's reports and in an annual DOT report to Congress. *See* 49 U.S.C. § 1135. The obvious intent of the response-and-report requirement is to make "reports . . . for the information of Congress . . . in aid of the legislative power," so that Congress can determine whether statutory safety legislation or other Congressional action is needed. *Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935). The requirement does not give NTSB any executive power over DOT. If DOT decided not to respond, for example, NTSB cannot force them to do so. Furthermore, regardless of DOT's response, at the end of the day, NTSB's recommendations are not binding on DOT. DOT must make its own decisions on whether to adopt them or not.

To the extent DOT feels pressure to adopt NTSB's recommendations,[1] or at least to respond to them, that is likely because of NTSB's reputation for objectivity and thoroughness, not because NTSB has any real power over DOT. *See* NTSB, *Fiscal Year 2026 Budget Request* at 7 (May 30, 2025), https://perma.cc/HTP5-F65F. For instance, Defendants point out that DOT quickly adopted NTSB's March 2025 recommendation to prohibit helicopter operations when certain runways are used at Reagan Washington National Airport (DCA), after a collision between a helicopter and an airplane killed 67 people there in January 2025. Defs.' Opp. 16-17. In contrast to President Trump's rush to blame diversity, equity, and inclusion initiatives in air traffic controller hiring the day after the crash, the NTSB conducted an investigation. *See* Pl.'s MSJ 22 & nn.15-16. After examining the wreckage, cockpit voice recordings, and other information, the NTSB made a considered recommendation to limit helicopter operations in certain circumstances near DCA. *See* NTSB, *DCA25MA108: Aviation Investigation Preliminary Report* (2025), https://perma.cc/2UF5-YX72. Presumably DOT took up that recommendation because it was a good one that would enhance safety and because DOT had confidence in the process that NTSB used to reach that recommendation. Had DOT (or the President) believed the recommendation was not a good one, DOT was free to reject it. DOT has rejected plenty of NTSB recommendations in the past.[2] Indeed, DOT is still free to reverse its adoption of the recommendation at any time, for any reason.

The non-binding nature of NTSB's recommendations and the structure of the NTSB— which work together such that the NTSB does not intrude on the President's ability to enforce the laws—distinguish the NTSB. Defendants argue that, so long as an agency does "important work,"

---

[1] Defs.' Opp. 18 (suggesting that DOT pays a "political cost for rejecting" NTSB's recommendations).

[2] *See, e.g.*, NTSB, *Annual Report to Congress* at 65 (2024), https://perma.cc/X3WU-9YZB (listing NTSB safety recommendations that were closed in 2024 because DOT disagreed with them); *id.* at 57 (in 2024, 18 NTSB safety recommendations to FAA were classified as "closed in an acceptable status"; 8 were "closed in an unacceptable status"; and 60 were "open-unacceptable response"); Kim Christensen, *Kobe Bryant crash renews battle over rejected safety regulations*, L.A. Times (Feb. 2, 2020), https://perma.cc/WWY2-5C6R (describing examples of FAA disagreeing with NTSB recommendations).

its head must be removable at will, citing *Collins v. Yellen*, 594 U.S. 220, 252 (2021). Defs.' Opp. 17. But, just as the NTSB is distinguishable from the CFPB in *Seila Law*, Pl.'s MSJ 16, the NTSB is distinguishable from the Federal Housing Final Agency (FHFA) in *Collins*. The focus of both *Seila Law* and *Collins* was that those two agencies were led by a single director. Like the CFPB, the FHFA was led by a single Director who served a five-year term, such that some Presidents will not have the opportunity to appoint a Director. *Collins*, 594 U.S. at 229. In contrast, the NTSB is a multimember board and every President has the opportunity to appoint at least four members in one Presidential term, including the opportunity to form a majority of his own political party. Pl.'s MSJ 5; *see also Collins*, 594 U.S. at 253 n.19 (distinguishing FHFA from Sinking Fund Commission because the Commission was led by multiple members and did not "operate[] beyond the President's control"). Also, the NTSB does not have "regulatory" or "enforcement" authority as the FHFA or CFPB do. Again, the NTSB's primary function is to investigate transportation accidents in order to make non-binding suggestions for improving safety.

### B. NTSB's investigative function is quasi-legislative.

The NTSB investigates transportation accidents so that it can recommend safety improvements. The NTSB's investigative powers are thus quasi-legislative because they "fall[] in the same general category as those powers which Congress might delegate to one of its own committees." *Buckley v. Valeo*, 424 U.S. 1, 137 (1976) (per curiam). The Supreme Court has long recognized that "the power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function." *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927) (upholding Congress's issuance of a subpoena); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504 (1975); *Buckley*, 424 U.S. at 138. Thus, contrary to Defendants' view, Defs.' Opp. 15, NTSB's incidental authority to issue regulations and subpoenas in support of its investigations do not constitute substantial executive power, but rather merely aid the NTSB "in the discharge and effectuation of its quasi legislative . . . powers." *Humphrey's Executor*, 295 U.S. at 628.

Congress was careful to design the NTSB's powers so that the President retained control over subpoena enforcement power. While the NTSB may issue subpoenas, only the Department of Justice (DOJ)—whose head, the Attorney General, is removable at will—can enforce them in court. Similarly, only DOJ has the "discretionary power to seek judicial relief" by filing a civil action against a person who, for example, fails to report an aircraft accident. *See Buckley*, 424 U.S. at 138; 49 U.S.C. § 1155(a). Under 28 U.S.C. § 516, "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General." *See also id.* § 519 ("Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party . . . ."). According to DOJ's Office of Legal Counsel, "to come within the 'as otherwise authorized by law' exception . . . , it is necessary that Congress use language authorizing agencies to employ outside counsel (or to use their own attorneys) to represent them in court." *The Attorney General's Role as Chief Litigator for the United States*, 6 Op. O.L.C. 47, 56-57 (1982); *United States v. Providence J. Co.*, 485 U.S. 693, 705 n.9 (1988) ("A statute that begins with 'Except as otherwise provided by law' creates a general rule that applies unless contradicted in some other provision."). The NTSB statute does not have such language. *See* 49 U.S.C. §§ 1113(a)(4); 1151. Thus, it must rely on DOJ to litigate.

Defendants suggest that 49 U.S.C. § 1151 allows either NTSB or the Attorney General (at NTSB's request) to bring a civil action. *See* Defs.' Opp. 15. But § 1151 should be read with attention to its history and how its subsections are structured. The current provision comes from a 1994 act "[t]o revise, codify, and enact *without substantive change*" various transportation laws in title 49 of the U.S. Code. Pub. L. No. 103-272, 108 Stat. 745, 745 (1994) (emphasis added). In the previous version, enacted as part of the FAA Act of 1958, subsection (a) was subheaded "Jurisdiction of Court" and subsection (b) was subheaded "Application for Enforcement," indicating that subsection (a) is intended to address which courts would have jurisdiction over the action while subsection (b) describes who would bring the action (the Attorney General). *See* FAA

Act of 1958, § 1007(a)-(b), 72 Stat. 731, 796; *see also* 49 U.S.C. § 1151 Historical and Revision Notes (tracing 49 U.S.C. § 1151 to § 1007 in the FAA Act). Plaintiff's reading also gives subsection (c) a more natural reading. Subsection (c) allows the NTSB to participate in the civil action upon the Attorney General's request. *See* 49 U.S.C. § 1151(c). If § 1151(a) is interpreted to allow the NTSB to bring civil actions on its own, then § 1151(c) would be largely redundant.

NTSB thus has no authority to bring a civil action on its own and can only try to persuade DOJ to do so on its behalf. NTSB's own historical practice supports this reading. Defendants have not identified a single instance in which NTSB has brought a civil action on its own.[3] That is because the power to bring a civil action is wielded by DOJ, not by the NTSB.

### C.  NTSB participates in international investigations under Annex 13 precisely because it is independent.

The Court should also reject Defendants' contention that the NTSB's members must be removable at will by the President because the NTSB participates in international aviation accident investigations under Annex 13 of the Convention on International Civil Aviation (the "Convention" or "Chicago Convention"). Defs.' Opp. 16. This argument is ironic: the NTSB assists in international investigations under Annex 13 precisely because the NTSB is independent. Under Annex 13, signatory states "shall establish an accident investigation authority that is independent from State aviation authorities and other entities that could interfere with the conduct or objectivity of an investigation." *See* ICAO, *Annex 13 to the Convention on Int'l Civ. Aviation: Aircraft Accident & Incident Investigation* § 3.2 (13th ed. 2024), https://perma.cc/HVN9-MT49 ("*Annex 13*"). An accompanying manual explains that "[t]he accident investigation authority must be strictly objective and totally impartial and must also be perceived to be so. The authority should be established in such a way that it can withstand political or other interference or pressure." ICAO, *Manual of Aircraft Accident and Incident Investigation (Doc 9756) Part I: Organization and*

---

[3] Defendants have identified only five instances from 1989 to today of the NTSB bringing civil actions. In each instance, DOJ brought suit on NTSB's behalf. *See* Defs.' Opp. 15 n.6 (citing examples).

*Planning* § 2.1.2 (2d ed. 2015), https://perma.cc/6GX7-WVNE. If an accident involving a U.S.-registered, U.S.-designed, or U.S.-manufactured aircraft or a U.S. operator occurs in another country, the United States may appoint an "accredited representative" to participate in that country's investigation. *Annex 13* § 5.18. The accredited representative is "normally . . . from the State's accident investigation authority." *Id.* § 1 (definition of "accredited representative"). It makes little sense to argue that the NTSB must lose its statutory independence because of its participation in international investigations under Annex 13 when its independence is why it participates in international investigations under Annex 13 in the first place. Doing away with NTSB members' for-cause removal protections would undermine the NTSB's ability to be impartial and the public's trust in the NTSB's objectivity and expertise.[4]

Defendants have also overstated the NTSB's role in foreign affairs while omitting roles of the State Department and DOT, whose heads are subject to at-will removal by the President. The NTSB "fulfills the obligations of the United States under Annex 13, *in coordination with and consistent with the requirements of the United States Department of State*." 49 C.F.R. § 831.22(b)(1) (emphasis added); *see also* NTSB, *NTSB's Role in Foreign Aviation Investigations* (updated June 12, 2025), https://perma.cc/BZ3S-WTAD ("The NTSB will work closely with Department of State when invited to a foreign state to assist under Annex 13."). The State Department—not the NTSB—is responsible for diplomatic relations with the International Civil Aviation Organization ("ICAO"), the "specialized agency of the United Nations" created by the Chicago Convention that "establish[es] standards for regulating international civil aviation," including Annex 13. *In re Air Crash Over S. Indian Ocean*, 352 F. Supp. 3d 19, 26 n.8 (D.D.C. 2018). The President appoints (and the Senate confirms) an ambassador who serves as the U.S.

---

[4] Alternatively, the word "normally" in Annex 13's definition of "accredited representative" suggests that Annex 13 does not strictly require the United States to appoint someone from the independent NTSB to assist in international investigations. To the extent the President is free to cut NTSB out of the process and appoint someone from another, dependent agency, that is another reason that at-will removal of NTSB members is not necessary for the President to adequately supervise the United States' participation in international investigations.

representative to the ICAO, and who sits within the State Department.[5] Congress has also directed the FAA to "exercis[e] leadership" in the ICAO. 49 U.S.C. § 40104.[6]

Defendants have also overstated the scope of the President's foreign affairs power. Foreign affairs is not a law-free zone. Defendants quoted *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936), which described the President as "the sole organ of the federal government in the field of international relations." Defs.' Opp. 16. But the Supreme Court has more recently noted that "[t]his description of the President's exclusive power was not necessary to the holding of *Curtiss-Wright*—which, after all, dealt with congressionally authorized action, not a unilateral Presidential determination." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015). The Court emphasized that, "whether the realm is foreign or domestic, it is still the Legislative Branch, not the Executive Branch, that makes the law," and "[t]he Executive is not free from the ordinary controls and checks of Congress merely because foreign affairs are at issue." *Id.* Here, in particular, it makes little sense to infer from NTSB's role under Annex 13 that the President must be able to override the removal protections Congress enacted. 49 U.S.C. § 1111(c) is not only consistent with *Humphrey's Executor* but is also consistent with the United States' commitment to having "independent" international accident investigators who "can withstand political or other interference or pressure." *See supra* Argument I.C.

---

[5] *See* S. Comm. on Homeland Sec. & Gov't Affs., 118th Cong., *U.S. Government Policy and Supporting Positions* at 108 (Comm. Print Nov. 12, 2024), https://perma.cc/K5V3-4YJF ("Plum Book"); Nominations, Congress.gov, *PN416-1—Jeffrey Anderson—Department of State*, https://perma.cc/3DSU-X6UW (President Trump's nominee currently awaiting confirmation).

[6] Reflecting these cabinet departments' leading roles, Congress typically tasks the Secretary of State and/or the Secretary of Transportation with making proposals to ICAO. *See, e.g.*, 22 U.S.C. § 5513 ("[T]he Secretary of State, in consultation with the Secretary of Transportation, shall propose to the International Civil Aviation Organization the establishment of a comprehensive aviation security program…."); *id.* § 3373(b) ("The Secretary of State, in coordination with the Secretary of Commerce and the Secretary of Transportation, is authorized— . . . (2) to instruct the United States representative to the ICAO to (A) use the voice and vote of the United States to ensure Taiwan's meaningful participation in ICAO . . . .").

**D.  NTSB's role in post-accident family assistance does not constitute substantial executive power.**

Nor does NTSB's role in post-accident family assistance constitute substantial executive power requiring at-will removal of Board members. In 1996, Congress enacted the Aviation Disaster Family Assistance Act after hearing numerous "horror stories" from family members of passengers killed in aviation accidents. H.R. Rep. No. 104-793, at 5 (1996). Family members recounted how airlines gave them only impersonal, cursory information and how, in some cases, mass burials were held without informing the deceased passengers' families. *Id.* Consistent with Congress's main concerns in enacting the Act, NTSB's role is primarily to keep passengers and their family members informed about the crash and the NTSB's investigation. 49 U.S.C. §§ 1136(a)(1), (d)(1), (e); 1140. Keeping passengers and family members informed is simply an extension of the NTSB's responsibility to keep the public informed of "the facts and circumstances of each accident." *See id.* § 1131(e) (requiring public reports); *see also* § 1136(e) (requiring NTSB to ensure that passengers' families "are briefed, before any public briefing, about the accident, its causes, and any other findings from the investigation" and that they are "informed of and allowed to attend any public hearings and meetings of the Board about the accident"); § 1139(e) (same); § 1140 (similar).

Contrary to Defendants' suggestion, Defs.' Opp. 14, the NTSB is not like FEMA. After a disaster, FEMA directly provides monetary assistance to cover temporary housing, home repairs, car repairs, food, water, baby formula, and the like. And it helps to fund disaster recovery work done by state and local governments and non-profits. *See* FEMA, *Assistance for Housing and Other Needs* (last updated Aug. 7, 2025), https://perma.cc/LL5V-R9BH; FEMA, *Assistance for Governments and Private Non-Profits After a Disaster* (last updated Aug. 8, 2025), https://perma.cc/6BLV-B5KL. In contrast, although NTSB designates a nonprofit such as the Red Cross to provide assistance to affected passengers and their families, NTSB does not fund that

assistance.[7] Nor does NTSB directly provide benefits. Such responsibilities fall on the airlines. *Compare* 49 U.S.C. § 1136(a)(2), *with id.* § 1136(f), *id.* § 41113(b)(10)-(11) (requiring air carriers to work with the designated nonprofit "to ensure that families of passengers receive an appropriate level of services and assistance following each accident" and to "provide reasonable compensation to" the designated nonprofit for services provided), *id.* § 41113(b)(12) (requiring air carrier to assist family members "in traveling to the location of the accident and provide for the physical care of the family"), *and id.* § 41313(b)(10)-(12) (same for foreign air carriers).[8] When airlines fail to carry out these responsibilities, DOT can bring enforcement actions against them. *See* Order 2014-02-20, *In re Asiana Airlines, Inc.*, No. OST-2014-0001 (DOT Feb. 25, 2014), https://perma.cc/3XUV-WULJ (imposing civil penalty). The NTSB has no such authority.

Also, NTSB has "primary *Federal* responsibility for *facilitating* the recovery and identification of fatally-injured passengers," 49 U.S.C. § 1136(b) (emphases added), but as Congress understood, "the actual hands-on work of recovery and identification is usually the responsibility of local authorities and medical examiners." H.R. Rep. No. 104-793, at 9. The provision was merely intended to allow the NTSB to "speed" the recovery and identification of passengers "as may be necessary." *Id.*

As for enforcement of the statutory provision prohibiting unsolicited attorney communications with passengers or family members for 45 days after an accident, 49 U.S.C. §§ 1136(g)(2); 1139(g)(2), as discussed above, the NTSB has no independent litigation authority, and thus is powerless to seek civil penalties unless DOJ agrees to pursue it for them. *See supra* Argument I.B; 49 U.S.C. §§ 1151; 1155(a). To the extent the Court believes that this little-used

---

[7] *See* H.R. Rep. No. 104-793, at 13 (estimating the Aviation Disaster Family Assistance Act would cost the federal government $750,000—the salaries of seven new NTSB staff and the cost to DOT of writing a report—without any mention of the government funding the assistance).

[8] Rail carriers have similar responsibilities in rail passenger accidents. *Compare* 49 U.S.C. § 1139(a)(2), *with id.* § 1139(f), *id.* § 24316(b)(10)-(11).

enforcement power[9] (or potentially other discrete functions) is still problematic, the Court should consider severing this provision, so that the NTSB can continue its core work of investigating accidents and making safety recommendations with its usual independence. "Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 627 (2020) (plurality op.). "Put in common parlance, the tail (one unconstitutional provision) does not wag the dog (the rest of the codified statute or the Act as passed by Congress)." *Id.* Here, where Congress has thought it important to protect the nation's aviation accident investigation authority from unrestricted Presidential removal power for nearly 90 years, *see* Pl.'s MSJ 3-4, severing a discrete, offending function would be more appropriate than severing the removal protections in § 1111(c). The rest of the NTSB's statute would still be "capable of functioning independently" and "be fully operative as a law." *Barr*, 591 U.S. at 628.

### E.  NTSB's appellate function weighs in favor of more, not less, independence.

Aside from conducting investigations and making safety recommendations, the NTSB also has a separate function of serving as an appellate tribunal in certain licensing and registration cases. In these appeals, the NTSB exercises no regulatory or enforcement power; it is purely an impartial adjudicator. *Garvey v. NTSB*, 190 F.3d 571, 573-74 (D.C. Cir. 1999). This function is quasi-judicial and does not require the exercise of substantial executive power such that the President must be able to remove NTSB members at will.[10] Because these appeals "concern the right to earn a livelihood," as Defendants recognize, Defs.' Opp. 21 n.7, and therefore may implicate individuals'

---

[9] DOJ has apparently brought suit under this provision on NTSB's behalf once in the provision's nearly 30-year existence. *See* Compl., *United States v. Collins*, No. 09-cv-6473, 2009 WL 5058813 (W.D.N.Y. Sept. 17, 2009).

[10] Defendants contend that, even if an administrative agency's activities take a "'judicial' form," it is nevertheless an exercise of executive power. Defs.' Opp. 21 (quoting *Seila Law*, 591 U.S. at 216 n.2). But this does not answer the question of whether the agency's activities are such that the President must have unfettered power to remove members of a multimember agency. If anything an agency does is "executive" and thus requires at-will removal, the Court would not have had to spend numerous pages in *Seila Law* distinguishing *Humphrey's Executor*.

due process rights,[11] it is important that they are resolved by fair and impartial adjudicators. The NTSB in its adjudicatory role thus has "a unique need for 'absolute freedom from Executive interference.'" *Collins*, 594 U.S. at 250 n.18; *see also Morrison*, 487 U.S. at 691 n.30.

Defendants' primary response is to analogize the NTSB, in its appellate role, to the Merit Systems Protection Board (MSPB), which the Supreme Court described in an order granting a stay pending appeal as having "considerable executive power." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025). But the MSPB has a different constellation of functions and different relationships with other federal agencies than the NTSB does. *See Harris v. Bessent*, 775 F. Supp. 3d 164, 170-71 (D.D.C. 2025). Moreover, as discussed in Plaintiff's motion, the Court explicitly stated in the *Wilcox* stay order that it did not "ultimately decide in [the stay] posture whether the NLRB or MSPB falls within [the *Humphrey's Executor*] exception." *Wilcox*, 145 S. Ct. at 1415; *see also Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (the Court's interim orders are "not conclusive as to the merits"). And given that the Court recently declined to grant certiorari before judgment in Cathy Harris's case challenging her removal from the MSPB, while granting certiorari in Rebecca Slaughter's similar case regarding the FTC, it is far from clear what the Court may eventually hold regarding adjudicatory agencies. *See Harris v. Bessent*, No. 25-312, 2025 WL 2692048 (D.D.C. Sept. 22, 2025); *Trump v. Slaughter*, Nos. 25A264, 25-332, 2025 WL 2692050 (U.S. Sept. 22, 2025).

In any event, it is not the lower courts' role to rule based on guesses about where the Supreme Court might be going; rather, they apply current precedent. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023). In *Wiener*, the Supreme Court unequivocally rejected "the claim that the President could remove a member of an adjudicatory body like the War Claims Commission merely because he wanted his own appointees on such a Commission," holding that "no such

---

[11] *See, e.g.*, *Greene v. McElroy*, 360 U.S. 474, 492 (1959) (recognizing that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment").

power is given to the President directly by the Constitution." *Wiener v. United States*, 357 U.S. 349, 356 (1958). To invalidate removal protections for NTSB members based on the NTSB's adjudicatory role would require this Court to overrule *Wiener*, which it cannot do.[12]

* * *

Because the NTSB is a multimember, bipartisan, expert agency that does not exercise substantial executive power, removal protections for NTSB members are constitutional.

## II.    Mr. Brown is entitled to declaratory and injunctive relief.

Defendants do not dispute that President Trump violated § 1111(c) by removing Mr. Brown. If 49 U.S.C. § 1111(c) is constitutional, then the Court should uphold the separation of powers and the rule of law and grant declaratory and injunctive relief to Mr. Brown.

### A.    Defendants misstate the law on declaratory relief and mischaracterize Plaintiffs' declaratory relief claim.

Relying primarily on *Samuels v. Mackell*, 401 U.S. 66 (1971), Defendants claim that the Mr. Brown is not entitled to a declaratory relief because there is essentially no difference between declaratory relief and an injunction, and they argue elsewhere that Mr. Brown is not entitled to an injunction. Defs.' Opp. 27-28. Defendants' reliance on *Samuels* is misplaced. The Supreme Court expressly stated that its holding did not apply outside that specific context of *Younger* abstention issues—where a federal plaintiff is seeking a declaratory judgment as a means of blocking an ongoing action in state court: "We, of course, express no views on the propriety of declaratory relief when no state proceeding is pending at the time the federal suit is begun." *Samuels*, 401 U.S. at 73-74.[13] Here, there is no parallel state court action pending and thus *Samuels* does not apply.

_____

[12] To the extent the Court nevertheless concludes that this discrete appellate function is problematic, it too can be severed. As discussed in Plaintiff's motion, it represents approximately 2% of the NTSB's budget and personnel. Pl.'s MSJ 7 & n.4.

[13] The two other cases cited by Defendants in support of their argument, Defs.' Opp. 27-28, *Macauley v. Waterman S.S. Corp.*, 327 U.S. 540 (1946), and *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943), do not help Defendants either. In *Macauley*, the Supreme Court affirmed the district court's decision that the Tax Court had exclusive jurisdiction over a contract dispute and the plaintiff had failed to exhaust its administrative remedies. 327 U.S. at 545 n.4. *Great Lakes* involved a question of whether a state tax could be levied against the plaintiffs. In

The government has raised this same argument in other recent removal cases and the courts have rejected its argument because of the limited context where *Samuels* applies. *Harper v. Bessent*, No. 1:25-cv-01294, 2025 WL 2049207, at *11 n.9 (D.D.C. July 22, 2025); *Grundmann v. Trump*, 770 F. Supp. 3d 166, 181 (D.D.C. 2025). More generally, Defendants' position on declaratory judgment would essentially render the Declaratory Judgment Act—which allows declaratory relief "whether or not further relief is or could be sought"—a nullity. 28 U.S.C. § 2201(a).

Even if *Samuels* did apply outside the context of parallel state and federal cases, this case would be one of those "unusual circumstances" recognized in *Samuels*

> in which an injunction might be withheld because, despite a plaintiff's strong claim for relief under the established standards, the injunctive remedy seemed particularly intrusive or offensive; in such a situation, a declaratory judgment might be appropriate and might not be contrary to the basic equitable doctrines governing the availability of relief.

401 U.S. at 73. Here, Defendants themselves have argued that injunctive relief would intrude on the executive power, *see* Defs.' Opp. 26, and the Supreme Court has cautioned that injunctive relief against the President would be "extraordinary," *see Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992)). In such a situation, it is all the more important that, if the Court determines that the President has violated the law, declaratory relief be granted against the President (and his subordinates). As Plaintiff set forth previously, this case is "one of 'significant public importance'" because it concerns the structure and independence of a federal agency." Pl.'s MSJ 20 (quoting *Harris v. Bessent*, 775 F. Supp. 3d 164, 179 (D.D.C. 2025)). Even if it is not an immediate "springboard to injunctive relief," Defs.' Opp. 28, at least as to the President, a declaratory judgment would clarify Defendants' legal obligations and guide future actions by the current and future Presidents and by the NTSB and NTSB chairs. To provide no relief whatsoever in the face of a President's blatant violation of a duly-enacted federal statute

---

*Great Lakes*, the Court affirmed the district court's decision to not grant declaratory judgment because it was "in the public interest . . . to avoid needless obstruction of the domestic policy of the states." 319 U.S. at 298. This case does not involve administrative exhaustion of remedies or states' policies.

would be antithetical to the rule of law and to the courts' "duty . . . to say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803); *see also Clinton v. Jones*, 520 U.S. 681, 703 (1997) ("[W]hen the President takes official action, the Court has the authority to determine whether he has acted within the law."). Indeed, courts in this district in recent removal cases have granted declaratory relief. *Harris*, 775 F. Supp. 3d at 180; *Grundmann*, 770 F. Supp. 3d at 181.

### B. Defendants fail to rebut Plaintiffs' entitlement to injunctive relief

The parties agree on the requirements for injunctive relief: in addition to a finding of liability, Plaintiff must establish irreparable harm and the inadequacy of monetary remedies, which are considered together and the balance of harms and the public interest, which are also considered together, must also favor Plaintiff. *See* Defs.' Opp. 22. But Defendants' arguments as to why Mr. Brown is not entitled to injunctive relief fall short.

#### 1. Plaintiff has established irreparable harm and inadequacy of monetary remedies.

As set forth in Plaintiff's initial brief, his removal deprives him of his statutory right to function which is an irreparable harm that cannot be remedied through monetary relief. *See* Pl.'s MSJ 20-21.

Defendants contend that the Court "lacks the equitable power to order reinstatement of a principal officer of the United States because that is not an equitable remedy traditionally accorded by courts of equity" and cite three cases in support of their argument: *In re Sawyer*, 124 U.S. 200 (1988), *White v. Berry*, 171 U.S. 366 (1898), and *Trump v. CASA, Inc*., 606 U.S. 831 (2025). Defs.' Opp. 27 n.10. In *Sawyer* and *White*, while the Supreme Court stated that removed officers could not seek relief through equity to resume their duties, they could obtain that relief through a court of law. *Sawyer*, 124 U.S. at 212; *White*, 171 U.S. at 377. After the merger of courts and law in the 1930's the distinction no longer makes a difference. *Wilcox v. Trump*, 775 F. Supp. 3d 215, 237 n.22 (D.D.C. 2025). Presumably, Defendants cite *Trump v. CASA* for the proposition that the only equitable remedies available today are those that existed in 1789 or are analogous. Defs.' Opp. 27

16

n.10. The form of relief was available then but in a court of law, and as with *White* and *Berry*, that distinction does not make a difference after the merger of courts of law and equity.

Defendants acknowledge that their argument conflicts with the D.C. Circuit's en banc order in *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *2 (D.C. Cir. Apr. 7, 2025). Defs.' Opp. 27 n.10. Defendants state that they are preserving the issue for further review, an implicit acknowledgement that *Harris* is binding on this court. *Id.* Indeed, the D.C. Circuit has held multiple times that injunctive relief is available. In *Swan*, 100 F.3d 973, and *Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023), the D.C. Circuit has held that subordinate officials could be enjoined to reinstate government officials who had been terminated by the President, though the particular claims in those cases were rejected. Recently, the D.C. Circuit, sitting *en banc* in *Harris*, found that the government was unlikely to succeed on its arguments that reinstating a removed official is not an available remedy. 2025 WL 1021435, at *2. Subsequent D.C. Circuit panels have noted the decision in *Harris*. *Slaughter v. Trump*, No. 25-5261, 2025 WL 2551247, at *6, n.1 (D.C. Cir. Sept. 2, 2025) ("This court sitting *en banc* has already found the government unlikely to succeed on that very same argument.") (citing *Harris v. Bessent*, 2025 WL 1021435, at *2); *Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *2 (D.C. Cir. June 5, 2025) (Pillard & Katsas, JJ., concurring) ("[I]t seems appropriate to defer to the views expressed by our *en banc* Court in denying a stay pending appeal in *Harris*, which found the government unlikely to succeed in its contention that reinstatement is rarely if ever an available remedy for unlawfully removed officials."). While reinstatements in *Harris* and *Slaughter* have been stayed pending appeal, none of the stay orders suggest that injunctive relief is categorically, or almost categorically, unavailable in removal cases on final judgment as Defendants contend here. *See Wilcox*, 145 S. Ct. at 1415; *Slaughter*, 2025 WL 2692050. Defendants do not mention *Swan* and *Severino* at all.

Defendants also argue that back pay is the only relief available to removed principal officers like Plaintiff and that injunctive relief is not available. Defs.' Opp. 23-25. Defendants note that in *Humphrey's Executor*, *Myers v. United States*, 272 U.S. 52 (1926), and *Wiener*, the plaintiffs

17

only sought back pay. But none of those cases addressed whether injunctive relief was available.[14] Relatedly, Defendants incorrectly assert that the D.C. Circuit recently rejected the "'statutory right to function' theory of irreparable injury" in its stay order in *Dellinger v. Bessent*, No. 25-552, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025). Defs.' Opp. 24. But the *Dellinger* stay order, as in the Supreme Court's stay orders in *Wilcox* and other cases, the court never stated that a removed official could not establish irreparable injury based on a statutory right to function but instead found that the government's harm was greater than that of the plaintiff in the specific context of a stay pending appeal. *Dellinger*, 2025 WL 887518, at *4.

In contending that a statutory right to function is not an irreparable harm to Plaintiff, Defendants look to general principles involving the termination of government employees, first citing to *Sampson v. Murray*, 415 U.S. 61 (1974). Defs.' Opp. 23. But notably in *Sampson*, the Supreme Court recognized that there are extraordinary situations where loss of a position could constitute irreparable injury. 415 U.S. at 92 n.68. Defendants then cite to holdings in cases that they even acknowledge involve "rank-and-file employees." Defs.' Opp. 23; *Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155 (7th Cir. 1998) (audit manager at an insurance company; *Davis v. Billington*, 76 F. Supp. 3d 59 (D.D.C. 2014) (Assistant Director of the Congressional Research Service's Foreign Affairs, Defense and Trade Division); *Farris v. Rice*, 453 F. Supp. 2d 76 (D.D.C. 2006) (Public Affairs Counselor at the American Embassy in Bangkok). Defendants next cite to cases that involve positions that they describe as "unique, singular, or high-level." Defs.' Opp. 23-24 & n.8. In the only one of those cases that even involves a federal position, Order at 8, *Brehm v. Marocco*, No. 1:25-cv-00660 (D.D.C. Mar. 11, 2025), ECF No. 15, when the court rejected the plaintiff's statutory right to function, it distinguished the plaintiff's case from those involving an officer that was Presidentially appointed and Senate confirmed where the claim was recognized as irreparable harm. Here, of course, Mr. Brown was Presidentially appointed and Senate confirmed.

---

[14] Humphrey and Myers were deceased and thus could not return to office. *See Humphrey's Executor*, 295 U.S. at 612; *Myers*, 272 U.S. at 106 (referring to removed postmaster as "appellant's intestate").

### 2.  The balance of equities and public interest factors favor Plaintiff.

Defendants' entire argument as to why the balance of equities weighs in their favor is based on the Supreme Court's orders granting the government's request for stays in *Wilcox* and *Boyle*. But *Wilcox*, in evaluating a petition for stay, was in a different posture than here. As discussed, a court considering a stay pending appeals is comparing harms for the relatively short time period that an appeal lasts. Pl.'s MSJ 19. Furthermore, in *Wilcox*, the Supreme Court weighed the equitable factors in the absence of a merits ruling. *Wilcox*, 145 S. Ct. at 1415. The same was true in *Boyle*. Here, in contrast, this Court only needs to reach the equitable factors if it first finds that Plaintiff is correct on the merits: that the NTSB does *not* exercise substantial executive power and that the NTSB's statutory removal protections are consistent with the separation of powers. If that is the case, the risk of harm that the Defendants have identified, the harm caused by "allowing a removed officer to exercise executive power," Defs.' Opp. 26, is largely obviated, as this Court will have found that the government has violated the statute, the statute is constitutional, and the officer does not exercise substantial executive authority.

Defendants fail to even address the specific arguments Plaintiff has made with respect to the public interest, including the importance to the public of having an independent agency investigate and make safety recommendations to prevent future airplane crashes and other major accidents free from political interference, including from the President. Pl.'s MSJ 22.

### C.  If an injunction is not available, the Court should grant a writ of mandamus

As Plaintiff set forth previously, a writ of mandamus could serve as alternative relief in the event the Court finds liability but determines that injunctive relief is not available and courts in this district have in several recent cases involving the removal of board members of independent agencies stated that a writ of mandamus could serve as an alternative where a plaintiff does not satisfy the requirements for injunctive relief. Pl.'s MSJ 23-24.

Defendants make brief arguments in opposition, none of which are persuasive. They claim that the President does not owe Plaintiff a clear nondiscretionary duty and that the President's

selection of who should lead an executive branch agency is not a ministerial task. Defs.' Opp. 28. The D.C. Circuit has already held that a writ of mandamus is a potential remedy for the improper removal of an officer. *Swan*, 100 F.3d at 976 n.1. Moreover, several courts in this district have held that removed officials were owed a clear nondiscretionary duty and that restoring them to their positions was a ministerial task but did not issue a writ of mandamus because they ordered injunctive relief instead. *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, 784 F. Supp. 3d 1, 47–48 (D.D.C. 2025); *Harris*, 775 F. Supp. 3d at 188; *Wilcox*, 775 F. Supp. 3d at 237 n.22. Defendants dismiss the district court cases on the grounds that the injunctive relief was subsequently stayed by a higher court. Defs.' Opp. 28-29. However, none of the stay orders addressed the issue of a writ of mandamus. Moreover, Defendants did not address *Swan* at all in their brief. The only other argument Defendants make is a rehash of their argument that Plaintiff could have sought back pay. Defs.' Opp. 28. For similar reasons as discussed above, *supra* Argument II.B.2, back pay is not an adequate remedy.

## CONCLUSION

For these reasons, Mr. Brown respectfully requests that the Court grant his Motion for Summary Judgment and deny Defendants' Cross-Motion for Summary Judgment.

Dated: October 20, 2025                 Respectfully submitted,

                                        */s/ Cynthia Liao*
                                        Cynthia Liao (D.C. Bar No. 90036947)
                                        Elena Goldstein (D.C. Bar No. 90034087)
                                        Victoria S. Nugent (D.C. Bar No. 470800)
                                        **DEMOCRACY FORWARD FOUNDATION**
                                        P.O. Box 34553
                                        Washington, DC 20043
                                        (202) 808-1982
                                        cliao@democracyforward.org

                                        Jon M. Greenbaum (D.C. Bar No. 489887)
                                        **JUSTICE LEGAL STRATEGIES PLLC**
                                        P.O. Box 27015
                                        Washington, D.C. 20038
                                        (202) 601-8678

jgreenbaum@justicels.com

*Counsel for Plaintiff*