**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ALVIN BROWN, in his official capacity,
    490 L'Enfant Plaza, SW
    Washington, D.C. 20594,

        *Plaintiff*,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States,
    1600 Pennsylvania Avenue, NW
    Washington, D.C. 20500,

JENNIFER HOMENDY, in her official
capacity as Chairman of the National
Transportation Safety Board,

and

NATIONAL TRANSPORTATION SAFETY
BOARD,
    490 L'Enfant Plaza, SW
    Washington, D.C. 20594,

        *Defendants*.

Case No. 1:25-cv-01764

**FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF**

---

**FIRST AMENDED COMPLAINT FOR DECALARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.    Defendant Donald J. Trump illegally removed Plaintiff Alvin Brown from his position as a member of the National Transportation Safety Board ("NTSB" or the "Board"). In doing so, President Trump contravened the NTSB's statutory protections against political interference, undermined the NTSB's historic independence, and violated Mr. Brown's constitutional right to equal protection under the law.

2.      Congress enacted the Independent Safety Board Act of 1974 for the purpose of creating an independent NTSB that would serve as a bipartisan, multi-member, independent board of experts, not as a vehicle for any president's political agenda. Congress ensured the Board's independence by limiting the President's authority to remove Board members. The President may remove a Board member only for inefficiency, neglect of duty, or malfeasance in office. 49 U.S.C. § 1111(c). By mandating that no more than three of the five members be of the same political party and by staggering the members' five-year terms, Congress intended for the Board's work to be informed by a diversity of viewpoints. At the same time, the law ensures that the President can shape the composition of the Board by granting the President authority to appoint a new member each year, with the advice and consent of the Senate. *Id.* § 1111(b).

3.      Plaintiff began his tenure as an NTSB Board Member when President Joe Biden nominated him in August 2022 and the Senate confirmed his nomination by voice vote on March 8, 2024, for a term expiring on December 31, 2026. President Biden appointed Plaintiff Brown as vice chair on December 20, 2024.

4.      Congress did not grant the President authority to remove NTSB members at will but instead only for inefficiency, neglect of duty, or malfeasance in office. The NTSB's structure, mission, and functions, along with the terms set for members, demonstrate Congress's intent to provide the Board with continuity, stability, and insulation from political pressure exerted by the President. Because the Board members perform predominantly quasi-legislative functions and quasi-judicial functions and do not exercise substantial or considerable executive power, these restrictions on the President's removal authority are constitutional.

5.      When Defendant Trump directed Defendant National Transportation Safety Board to remove Plaintiff Brown from his position on May 5, 2025, he lacked any cause to do so, and

therefore, Plaintiff Brown's removal was illegal under the NTSB's governing statute. Defendant NTSB has prevented Plaintiff Brown from performing his duties as a member in the wake of his removal.

6. Defendant Trump's illegal removal of Mr. Brown, as carried out by Defendants Homendy and NTSB, has significant and damaging consequences for the work of the Board and its investigation and reporting of major transportation accidents and casualties.

7. Defendant Trump's removal of Mr. Brown further violated Mr. Brown's constitutional rights under the Fifth Amendment. The Fifth Amendment's Due Process Clause guarantees the federal government will provide all people with equal protection under the law. Included within the ambit of these rights is protection against discrimination in employment decisions. President Trump violated Mr. Brown's Fifth Amendment rights by removing him from his Board position, at least in part, because of Mr. Brown's race.

8. Mr. Brown was the only Black member of the NTSB. Mr. Brown was removed as opposed to similarly situated members of the Board in part because of his race.

9. Mr. Brown's status as a Democrat cannot serve as the sole reason President Trump removed him because, at the time of the removal, the Board included two other white Democratic members, Chair Jennifer Homendy and Member Thomas B. Chapman, who were not removed.

10. When he removed Mr. Brown, President Trump offered no reason for his decision. Any post-hoc, non-discriminatory reason would represent a mere pretextual effort to cover up the impermissible role race played in Mr. Brown's termination.

11. This choice—to remove the Black member of the Board without explanation while leaving in place similarly situated white members—fits within a pattern of Trump Administration removals of high-level Black officials in the federal government, including Senate-confirmed

members of independent Commissions. Consistently, when President Trump has removed Black Senate-confirmed appointees, he has either nominated a non-Black individual for their replacement or has not formally replaced them at all. This trend fits with President Trump's consistent messaging criticizing diversity and inclusion and his clear and demonstrable emphasis on hiring white people.

12.    Mr. Brown seeks declaratory relief against all Defendants and injunctive relief against Defendant NTSB to enable him to perform his duties as a Board member as a remedy for Defendants' harmful and illegal actions. These remedies will help ensure that the NTSB can resume its congressionally mandated work as Congress intended and that Mr. Brown's constitutional and statutory rights can finally be vindicated.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

14.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

15.    Plaintiff Alvin Brown is a Board member of the NTSB, confirmed by a voice vote of the United States Senate to a five-year term expiring December 31, 2026.

16.    Defendant Donald J. Trump is sued in his official capacity as President of the United States. Defendant Trump resides at 1600 Pennsylvania Avenue, NW, Washington, D.C. 20500.

17.    Defendant Jennifer Homendy is the Chairman of the National Transportation Safety Board and is sued in her official capacity.

18.     Defendant National Transportation Safety Board is an independent federal agency headquartered in Washington, D.C., at 490 L'Enfant Plaza, SW, Washington, D.C. 20594.

## STATUTORY BACKGROUND

19.     The NTSB is an independent government agency tasked with securing the safety of American transportation by investigating accidents, performing studies, issuing safety recommendations, and assisting the victims and survivors of transportation disasters.

20.     The NTSB can be traced to the Air Commerce Act of 1926, when Congress vested the Department of Commerce with the responsibility to investigate aircraft accidents. That authority was later transferred to the Civil Aeronautics Board upon its creation in 1940. By 1967, Congress decided that transportation safety could be more effectively promoted by a single agency with a clearly defined mission rather than the piecemeal approach of having different entities for different modes of transportation. Congress consolidated them all under the newly minted National Transportation Safety Board, within the newly created Department of Transportation (DOT).

21.     Seven years later, in 1974, Congress bolstered the NTSB's independence by establishing the NTSB as a separate entity outside of DOT or any other agency as set forth in the Independent Safety Board Act of 1974. Congress explained that the NTSB needed to be independent of the Department of Transportation and all other agencies in order to conduct independent accident investigations and formulate safety improvement recommendations that at times may be critical of agencies and their officials:

> (1) The National Transportation Safety Board was established by statute in 1966 (Public Law 89-670; 80 Stat. 935) as an independent Government agency, located within the Department of Transportation, to promote transportation safety by conducting independent accident investigations and by formulating safety improvement recommendations.
>
> (2) Proper conduct of the responsibilities assigned to this Board requires vigorous investigation of accidents involving transportation modes regulated by other

agencies of Government; demands continual review, appraisal, and assessment of the operating practices and regulations of all such agencies; and calls for the making of conclusions and recommendations that may be critical of or adverse to any such agency or its officials. No Federal agency can properly perform such functions unless it is totally separate and independent from any other department, bureau, commission, or agency of the United States.

Independent Safety Board of Act of 1974, Pub. L. No. 93-633, § 302, 88 Stat. 2156, 2166-67 (1975).

22. Consistent with its findings, Congress explicitly established the NTSB as an independent agency: "The National Transportation Safety Board is an independent establishment of the United States Government." 49 U.S.C. § 1111(a).

23. Congress structured the Board as what the Supreme Court has characterized as "a traditional independent agency, run by a multimember board with a diverse set of viewpoints and experiences." *Seila Law LLC v. CFPB*, 591 U.S. 197, 205–06 (2020) (cleaned up). The Board consists of five members "appointed by the President, by and with the advice and consent of the Senate," and "[n]ot more than 3 members may be appointed from the same political party." 49 U.S.C. § 1111(b). At least three of the members must be "appointed on the basis of technical qualification, professional standing, and demonstrated knowledge in accident reconstruction, safety engineering, human factors, transportation safety, or transportation regulation." *Id.*

24. The members serve five-year terms. 49 U.S.C. § 1111(c). The terms are staggered so that each year the term of one member ends. Department of Transportation Act, Pub. L. 89-670, § 5(i), 80 Stat. 931, 936 (1966). When the term ends, the member may continue to serve until a successor is appointed and qualified. 49 U.S.C. § 1111(c).

25. The President may only "remove a member for inefficiency, neglect of duty, or malfeasance in office." *Id.*

6

26.    The President designates a Chairman of the Board with the advice and consent of the Senate. 49 U.S.C. § 1111(d). The Chairman serves as the chief executive and administrative officer of the Board. *Id.* § 1111(e). The President also designates a Vice Chairman. *Id.* § 1111(d). Both the Chairman and Vice Chairman serve three-year terms in those positions. *Id.*

27.    Consistent with its status as a traditional independent agency, the NTSB primarily exercises quasi-legislative and quasi-judicial functions. It only exercises executive functions in the discharge of its quasi-legislative and quasi-judicial functions. Most of the NTSB's functions are quasi-legislative.

28.    The NTSB describes itself as "an independent agency" whose "mission" since its 1967 creation "has been to determine the probable cause of transportation accidents and to formulate safety recommendations to improve transportation safety." NTSB, *What is the National Transportation Safety Board?*, at 1, https://perma.cc/UZ9P-ENE9 (last visited June 3, 2025). The NTSB's primary function is to "investigate or have investigated" and "establish the facts, circumstances, and cause(s)" of major accidents involving transportation, 49 U.S.C. § 1131(a)(1), including:

> all U.S. civil aviation accidents and certain public-use aircraft accidents; selected highway accidents; railroad accidents involving passenger trains or selected freight train accidents that result in fatalities or significant property damage; major marine accidents and any marine accident involving both a public and a nonpublic vessel; pipeline accidents involving fatalities, substantial property damage, or significant environmental damage; selected accidents resulting in the release of hazardous materials in any mode of transportation; and selected transportation accidents that involve problems of a recurring nature or are catastrophic.

*What is the National Transportation Safety Board?* at 1. The Board "shall report on the facts and circumstances of each accident investigated by it." 49 U.S.C. § 1131(e).

29.    In addition, the Board issues an annual report to Congress about its work and periodic reports to Congress and other federal and state transportation safety agencies and conducts special studies and investigations about transportation safety. 49 U.S.C. §§ 1116-17.

30.    Notably, as part of these investigatory, reporting, and recommending functions, the NTSB "has no regulatory or enforcement authority and does not investigate criminal activity." NTSB, *NTSB Accident Investigations: Information for survivors, families & friends*, https://perma.cc/WM6X-BKHG (last visited June 3, 2025). The NTSB has no authority to enforce any safety recommendations it makes.

31.    The Board reviews on appeal certain certification decisions made by other agencies, such as the denial, amendment, modification, suspension, or revocation of certificates issued by the Federal Aviation Administration or Coast Guard. *See* 49 U.S.C. § 1133.

## FACTUAL ALLEGATIONS

32.    Plaintiff Brown was nominated as a Democratic member of the NTSB in August 2022 and renominated on January 23, 2023, by President Joe Biden. He was confirmed by the Senate by voice vote on March 8, 2024, to a term expiring on December 31, 2026. President Biden named Mr. Brown Vice Chair of the Board on December 20, 2024.

33.    Prior to his appointment as a NTSB Member, Mr. Brown had a long and distinguished career in urban planning, public administration, and transportation as a public servant. He served as senior advisor to former Commerce Secretary Ron Brown, Vice President Al Gore's Senior Advisor for Urban Policy, and executive director of the White House Community Empowerment Board. He was the first-ever Black person elected as mayor of Jacksonville, Florida and served from 2011 to 2015. During his mayoral tenure, he served as Chair of the Port and Exports Council and Vice-Chair of the Transportation Committee for the United States Conference

of Mayors. He also served as senior advisor for community infrastructure opportunities at the United States Department of Transportation.

34.     On May 5, 2025, at 6:57 p.m., Mr. Brown received an email from Trent Morse, the Deputy Director of Presidential Personnel of the White House. The entire body of the email reads as follows:

> Alvin,
>
> On behalf of President Donald J. Trump, I am writing to inform you that your position on the National Transportation Safety Board is terminated effective immediately.
>
> Thank you for your service.
>
> Trent Morse
> Deputy Director
> Presidential Personnel

As the email reflects, Mr. Brown was not removed for inefficiency, neglect of duty, or malfeasance in office. Mr. Brown was given no further reasons for his removal.

35.     Defendants Homendy and NTSB cut off Mr. Brown's access to NTSB systems, email, and offices on May 6, 2025, and Mr. Brown has not been able to perform his duties as a Board Member since that date. Around the same time, the NTSB human resources office took other steps to effectuate Mr. Brown's removal, including informing Mr. Brown's staff that his employment was being terminated because of his removal; requiring Mr. Brown to return his equipment; and processing the federal personnel paperwork to officially document his departure.

36.     On September 10, 2025, President Trump nominated John DeLeeuw, a white man, to Mr. Brown's position. Mr. DeLeeuw's nomination is pending before the Senate.

37.     Mr. Brown is a Black man. At the time of his removal from the NTSB there were four other members on the Board: Defendant Chair Jennifer Homendy and Members Michael E. Graham, Thomas B. Chapman, and J. Todd Inman. Homendy, Graham, Chapman, and Inman are

all white. Homendy and Chapman are Democratic members. Graham and Inman are Republican ones. All four remain current members of the Board.

38.     Mr. Brown's removal from the NTSB cannot be explained by the fact that Mr. Brown is a Democrat and President Trump might have wanted to exert Republican control over the Board. At the time of Mr. Brown's removal from the NTSB, there were two other Democrats serving on the Board: Defendant Chair Jennifer Homendy and Member Thomas B. Chapman. Member Chapman was nominated for a position on the NTSB by President Trump and took his oath of office on January 6, 2020. Unlike Mr. Brown, whose term on the Board does not expire until 2026, Member Chapman's term on the NTSB already expired on December 31, 2023. Member Chapman has, since 2023, continued serving in his seat on the NTSB, despite his expired term. Instead of removing Mr. Brown, President Trump could have nominated Mr. DeLeeuw or somebody else in the seat where Mr. Chapman is serving as a holdover. He could have also removed Ms. Homendy.

39.     Based on publicly reported information, Mr. Brown's removal was the first time that a sitting member of the NTSB has been removed prior to the expiration of their term in the Board's modern history.

40.     Mr. Brown's firing fits within a pattern of the Trump Administration disproportionately removing Black government officials, and particularly presidentially appointed and Senate-confirmed Board members of independent multimember agencies. Based on available data on the Trump Administration's firings and appointments, since the beginning of President Trump's second term in office, approximately 75 percent of Black federal officials leading multimember agencies have been removed from office. In contrast, only approximately 27 percent of white federal officials on multimember agencies have been removed.

41.     President Trump has removed or attempted to remove six Black members of multi-member agencies—Mr. Brown, Robert Primus of the Surface Transportation Board, Gwynne Wilcox of the National Labor Relations Board, Charlotte Burrows of the Equal Employment Opportunity Commission, Travis LeBlanc of the Privacy and Civil Liberties Oversight Board, and Lisa Cook of the Federal Reserve. Out of this group, President Trump has nominated a replacement for only one: Mr. Brown.

42.     The removal of Mr. Brown and other Black independent agency board commissioners reflects a broader pattern across the government of President Trump removing high-level Black officials. On May 8, 2025, he removed Carla Hayden, a Black woman, as the Librarian of Congress. On February 21, 2025, he removed Gen. Charles Q. Brown, Jr., a Black man, as the Chairman of the Joint Chiefs of Staff. In General Brown's case, President Trump replaced him with Lieutenant General Dan Caine, a white man, who did not have the statutory requirement of status as a five-star general and could serve only because the President waived that requirement.

43.     President Trump and high government officials have made several public statements indicating that he and his administration are seeking to remove people of color throughout the federal government, including:

44.     President Trump's statement on March 4, 2025, that "[w]e have to end the tyranny of so-called diversity, equity, and inclusion policies all across the entire federal government."

45.     The White House press release on March 4, 2025, stating President Trump has "declared an end to lower standards in the name of discriminatory 'diversity, equity, and inclusion' (DEI) initiatives."

46.    President Trump's statement on March 18, 2025, that "[w]e will terminate every diversity, equity, and inclusion program across the entire federal government."

47.    President Trump's claim on April 26, 2025, that he "ended all of the lawless so-called diversity, equity, and inclusion bullshit. All across the entire federal government and the private sector."

48.    In some of the President's firings of Black officials, White House representatives have made statements explicitly linking the choice to remove the individual to their relationship to ideas of diversity and inclusion. After Mr. Trump terminated Ms. Hayden as Librarian of Congress, the White House Press Secretary referenced the "quite concerning things that she had done at the Library of Congress in pursuit of DEI" in explaining the decision on May 5, 2025. Before his appointment, Secretary of Defense Pete Hegseth suggested that General Brown had obtained his appointment because of his race and stated that General Brown needed to be fired because of his commitment to diversity, equity, and inclusion.

49.    Under President Trump, the Executive Branch has also at times made a clear and demonstrable emphasis on hiring white men. *See, e.g.*, Meryl Kornfield, *Labor Department Social Media Campaign Depicts a White Male Workforce*, Wash. Post (Nov. 7, 2025), https://perma.cc/J3EX-H3SQ (documenting Department of Labor workforce posters featuring almost exclusively white men).

50.    More generally, Black officials and Black employees across the federal government have been removed from their jobs at disproportionate rates. *See* David Smith, *Trump Has Assembled the Least Diverse U.S. Government This Century, Study Shows*, The Guardian (Nov. 21, 2025, 8:00 PM EST), https://perma.cc/H325-HXRH; Elisabeth Bumiller & Erica L. Green, *Trump Fires Black Officials from an Overwhelmingly White Administration*, N.Y. Times (Oct. 8, 2025),

https://perma.cc/2DBG-3XFH; Erica Green, *In Trump's Federal Work Force Cuts, Black Women Are Among the Hardest Hit*, N.Y. Times (Aug. 31, 2025), https://perma.cc/QVG9-F7AM; J. David McSwane, *Dismissed by DEI: Trump's Purge Made Black Women With Stable Federal Jobs an 'Easy Target'*, ProPublica (June 4, 2025, 10:40 AM), https://perma.cc/6WTN-RGBX; Mitchell Hartman, *Government Job Cuts Have Disproportionate Effect on Black Federal Workers*, Marketplace (May 21, 2025), https://perma.cc/EFY4-V3CW.

51.     Additionally, in the Trump Administration's first 200 days, only two percent of all of President Trump's Senate-approved appointees have been Black individuals. Bumiller & Green, *supra*.

## CLAIMS FOR RELIEF

### COUNT I

**Ultra Vires Action in violation of the Independent Safety Act of 1974**
**49 U.S.C. § 1111**

52.     Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

53.     Plaintiff Brown is entitled to retain his role as an NTSB Member because he was appointed and confirmed to a term that was not scheduled to end until December 31, 2026.

54.     Defendant Trump lacked authority to remove Plaintiff Brown prior to the expiration of his term. Under the Independent Safety Board Act of 1974, the President may only remove a member "for inefficiency, neglect of duty, or malfeasance in office." 49 U.S.C. § 1111(c).

55.     In the email removing Mr. Brown, Defendant Trump did not allege that Mr. Brown had engaged in inefficiency, neglect of duty, or malfeasance in office. Thus, President Trump violated 49 U.S.C. § 1111(c) for ordering the removal of Mr. Brown without a showing of inefficiency, neglect of duty, or malfeasance in office. Defendants Homendy and NTSB violated

13

49 U.S.C. § 1111(c) by effectuating the removal and preventing Mr. Brown from exercising his duties as an NTSB member.

56.     There is a substantial and continuing controversy between Plaintiff Brown and the Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that Mr. Brown is a Member of the NTSB.

57.     Injunctive relief against Defendants Homendy and NTSB is necessary and appropriate to permit Mr. Brown to perform his duties as a Board Member.

## COUNT II

### Fifth Amendment Due Process Clause

58.     Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

59.     The Fifth Amendment's Due Process Clause forbids the federal government from denying individuals equal protection of the laws and creates a constitutional right to be free from illegal discrimination in employment perpetrated by the federal government, *Davis v. Passman*, 442 U.S. 228, 242–44 (1979).

60.     As a Black Person, Mr. Brown is in a protected class. His removal is an adverse employment action, and he was treated differently from similarly situated people, the other members of the Board, and particularly the white Democratic members.

61.     President Trump has not offered a non-discriminatory reason for his choice to remove Mr. Brown.

62.     Even if the Defendants assert a non-discriminatory reason, any purported non-discriminatory reason is pretextual, and race was at least in part the reason for removing Mr.

Brown. As discussed above, Mr. Brown's removal is part of a larger pattern of President Trump and his Administration removing Black officials and employees because of their race.

63.    This Court has equitable power to remedy the substantial and continuing controversy arising from Mr. Brown's removal by declaring it a violation of the Fifth Amendment.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

(a) Declare that the removal of Plaintiff Alvin Brown as a member of the National Transportation Safety Board was unlawful, in violation of the Independent Safety Board Act of 1974, 49 U.S.C. § 1111; that Plaintiff Brown remains a Member of the NTSB, having been appointed by the President and confirmed by the Senate to a term ending on December 31, 2026; and that he cannot be removed by the President prior to the expiration of his term absent a showing of inefficiency, neglect of duty, or malfeasance in office;

(b) Declare that the removal of Plaintiff Alvin Brown as a member of the National Transportation Safety Board was unlawful, in violation of the Fifth Amendment of the U.S. Constitution;

(c) Enjoin Defendants Homendy and the NTSB from blocking Plaintiff Brown's access to his office or in any way treating Plaintiff Brown as having been removed, from impeding in any way his ability to fulfill his duties as a Member of the NTSB, and from denying or obstructing his authority or access to any benefits or resources of the office;

(d) Direct Defendants Homendy and the NTSB and their subordinates, agents, and employees to provide Plaintiff Brown with access to the necessary government

facilities and equipment so that he may carry out his duties during his term as a Member of the NTSB;

(e) Issue a writ of mandamus ordering Defendants Homendy and the NTSB to refrain from blocking Plaintiff Brown's access from his office or in any way treating Plaintiff Brown as having been removed, from impeding in any way his ability to fulfill his duties as a Member of the NTSB, from denying or obstructing his authority or access to any benefits or resources of the office, and requiring them to provide Plaintiff Brown with access to the necessary government facilities and equipment so that he may carry out his duties during his term as a Member of the NTSB; and

(f) Grant any other relief this Court deems appropriate.

16

Dated: December 4, 2025                Respectfully submitted,

/s/ *Catherine M.A. Carroll*

Catherine M.A. Carroll (D.C. Bar No. 497890)
Cynthia Liao (D.C. Bar No. 90036947)
Victoria S. Nugent (D.C. Bar No. 470800)
Ross Snyder (D.C. Bar No. 90037922)*
**DEMOCRACY FORWARD
FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
(202) 316-9057
ccarroll@democracyforward.org

Jon M. Greenbaum (D.C. Bar No. 489887)
**JUSTICE LEGAL STRATEGIES PLLC**
P.O. Box 27015
Washington, D.C. 20038
(202) 601-8678
jgreenbaum@justicels.com

*Counsel for Plaintiff Alvin Brown*

 **Application for admittance pending*