IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ALVIN BROWN, <br><br> Plaintiff, <br><br> v. <br><br> DONALD J. TRUMP, in his Official Capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil Action No. 25-1764 (DLF) |

## DEFENDANTS' MOTION TO STAY

Defendants respectfully request that this Court stay this case pending the Supreme Court's resolution of *Trump v. Slaughter*, No. 25-332.  Like this case, *Slaughter* deals with the scope of the President's authority under Article II of the Constitution to remove a member of a partisan-balanced, multimember commission.  The Supreme Court's ruling in *Slaughter* is therefore likely to have a significant impact on this case.  A temporary stay of proceedings to await the Supreme Court's guidance would thus promote efficiency and conserve judicial and party resources.

Defendants also respectfully request that this Court immediately extend Defendants' deadline to respond to the Amended Complaint to 14 days after the Court rules on the stay request, so that Defendants are not required to respond to the Amended Complaint while this Court considers whether to stay the case.

Defendants' counsel conferred with Plaintiff's counsel, who advised that Plaintiff does not oppose staying Count I of the Amended Complaint pending the resolution of *Slaughter*, but Plaintiff opposes staying Count II.  Plaintiff also consents to extending Defendants' deadline to respond to the Amended Complaint to 14 days after the Court rules on the stay request.

1

## BACKGROUND

Until he was removed from office by President Trump, Plaintiff Alvin Brown was a member and Vice Chair of the National Transportation Safety Board (NTSB).  *See* Defs.' Resp. to Pl.'s Statement of Material Facts, ECF No. 19-2, ¶¶ 1, 3 ("Defs.' SOMF Resp.").  The NTSB is an Executive Branch agency that, among other things, investigates and reports on the causes of certain transportation accidents, and adjudicates appeals of certain licensing and certification decisions by the Federal Aviation Administration and Coast Guard.  *See generally* 49 U.S.C. §§ 1101-1155.  The NTSB is "composed of 5 members appointed by the President, by and with the advice and consent of the Senate.  Not more than 3 members may be appointed from the same political party." 49 U.S.C. § 1111(b).  The statute provides: "The President may remove a member for inefficiency, neglect of duty, or malfeasance in office."  *Id.* § 1111(c).

On May 5, 2025, President Trump removed Plaintiff from the NTSB through an email from an aide.  Defs.' SOMF Resp. ¶¶ 4-5.  The email did not provide cause for Plaintiff's removal.  *Id.* ¶¶ 5-6.  Rather, Defendants' legal position is that the President has Article II authority to remove NTSB members, and the statutory for-cause removal provision is unconstitutional.

On June 4, 2025, Plaintiff filed his original Complaint in this action.  *See* Compl., ECF No. 1.  The Complaint contained one legal claim, that President Trump's removal of Plaintiff was an ultra vires action in violation of 49 U.S.C. § 1111(c).  *See id.* ¶¶ 31-36.

The parties agreed to forgo Defendants' response to the Complaint and proceed straight to briefing cross-motions for summary judgment, explaining that "[t]he key issues in this case are questions of law: whether Mr. Brown's removal violated the statute and whether the statute is constitutional."  Joint Motion for Briefing Schedule, ECF No. 14, at 1.  That summary judgment

briefing is nearly complete, with the only remaining brief being Defendants' reply brief in support of their cross-motion for summary judgment, currently due January 2, 2026.[1]

The parties' briefing has focused largely on the scope of the President's Article II authority to remove members of multimember commissions. Plaintiff has argued that the NTSB's for-cause removal restriction is constitutional under *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and other cases. *See* Mem. of Points and Authorities in Supp. of Pl.'s Mot. for Summ. Judg., ECF No. 17-1, at 11-18 ("Pl.'s SJ Mem."); Pl.'s Reply in Supp. of Pl's. Mot. for Summ. Judg. / Opp'n to Defs.' Cross-Mot. for Summ. Judg., ECF No. 22, at 3-14 ("Pl.'s SJ Reply"). Defendants, by contrast, have argued that the President has Article II authority to remove NTSB members at will, making § 1111(c) unconstitutional. *See* Mem. of Law in Opp'n to Pl.'s Mot. for Summ. Judg. and in Supp. of Defs.' Cross-Mot. for Summ. Judg., ECF No. 19-1 at 11-22 ("Defs.' SJ Mem."). The parties have also disputed whether, in the event Plaintiff succeeds on the merits, he would be entitled to reinstatement in office. *See* Pl.'s SJ Mem. 19-24; Pl.'s SJ Reply 16-20; Defs.' SJ Mem. 22-29.

On September 22, 2025, the Supreme Court granted certiorari in *Trump v. Slaughter*, No. 25-332, --- S. Ct. ---, 2025 WL 2692050 (Sept. 22, 2025), a case involving President Trump's removal of a commissioner of another multimember agency, the Federal Trade Commission (FTC). The Supreme Court directed the parties to address the following questions: "(1) Whether the statutory removal protections for members of the Federal Trade Commission violate the separation of powers and, if so, whether *Humphrey's Executor* v. *United States*, 295 U.S. 602, 55

---

[1] The Court set a deadline for this brief of November 10, 2025. *See* Minute Order (Oct. 2, 2025). Pursuant to Standing Order No. 25-59, ¶ 1 (D.D.C. Nov. 13, 2025) (Boasberg, C.J.), that deadline was extended by 53 days, to January 2, 2026, in light of the lapse in appropriations to the Department of Justice.

S.Ct. 869, 79 L.Ed. 1611 (1935), should be overruled. (2) Whether a federal court may prevent a person's removal from public office, either through relief at equity or at law." *Id.* *Slaughter* is fully briefed and is scheduled to be argued on December 8, 2025.

On December 4, 2025, Plaintiff filed his Amended Complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). *See generally* Am. Compl., ECF No. 25. The Amended Complaint adds a second claim, that President Trump allegedly removed Plaintiff because of his race, purportedly in violation of the equal protection component of the Fifth Amendment's Due Process Clause. *Id.* ¶¶ 58-63. Defendant's deadline to respond to the Amended Complaint is currently December 18, 2025. *See* Fed. R. Civ. P. 15(a)(3).

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. A court's judgment to stay "may be appropriately exercised where a separate proceeding bearing upon the case is pending." *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (Kennedy, J.)). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Levya*, 593 F.2d at 863.

I. **Courts in This District and Elsewhere Routinely Stay Proceedings to Await Guidance from a Higher Court**

Two courts in this District recently stayed cases challenging President Trump's removal of executive officers pending the Supreme Court's resolution of *Slaughter*. *See Storch v. Hegseth*, --- F. Supp. 3d ---, 2025 WL 2758238, at *9 (D.D.C. Sept. 24, 2025) (Reyes, J.) (staying case challenging President Trump's removal of inspectors general); Minute Order, *Samuels v. Trump*, No. 1:25-cv-1069 (D.D.C. Oct. 24, 2025) (Chutkan, J.) (staying case challenging President Trump's removal of a Commissioner of the Equal Employment Opportunity Commission).

In so doing, those courts joined other courts in this District, which have routinely stayed proceedings to promote judicial economy and efficiency where a higher court's ruling in the same or a similar matter will bear on further proceedings before the district court. *See, e.g.*, *Ready to Win v. FEC*, 2023 WL 10512144, at *2 (D.D.C. July 28, 2023) (staying proceedings pending interlocutory appeal, reasoning that discovery "may prove unnecessary or may be narrowed in light of the D.C. Circuit's decision"); *Blumenthal v. Trump*, 2019 WL 3948478, at *3 (D.D.C. Aug. 21, 2019) ("The Court will also stay proceedings in this case pending the interlocutory appeal."); *Philipp v. Fed. Republic of Germany*, 253 F. Supp. 3d 84, 89 (D.D.C. 2017) ("[T]he Court concludes that it is appropriate to stay the proceedings while Defendants' interlocutory appeal is pending" and "shall not require Defendants to respond to the complaint and the parties to proceed with discovery at this time."); *Univ. of Colo. Health Mem'l Hosp. v. Burwell*, 2017 WL 535246, at *12 (D.D.C. Feb. 9, 2017) ("Because many of the applicable issues may be resolved by the D.C. Circuit, and because the D.C. Circuit may otherwise provide instruction on the issues here, the Court finds a stay would serve the interests of judicial efficiency."); *Allina Health Servs. v. Sebelius*, 756 F. Supp. 2d 61, 71 (D.D.C. 2010) (finding "good cause to stay this matter" given

that "the parties agree that the resolution of [a related case] by the D.C. Circuit will be dispositive of the Plaintiffs' arguments here").

Courts in other jurisdictions have stayed proceedings in similar circumstances. *See, e.g.*, *Minn. Voters Alliance v. Walz*, 494 F. Supp. 3d 610, 611 (D. Minn. 2020) (staying proceedings pending appeal of preliminary injunction because, among other things, the appeal was "likely to resolve some of the legal issues in dispute"); *Fowler-Bey v. Johnson*, 2018 WL 11476084, at *1-2 (D. Md. Nov. 30, 2018) (staying case where a "central issue" affecting plaintiff's claim was pending before the Fourth Circuit in another case); *Dawoudi v. Nationstar Mortg., LLC*, 2016 WL 8711604, at *2 (N.D. Ill. Sept. 16, 2016) ("Because a decision in the pending appeals [in other cases presenting similar legal issues] would potentially be entirely dispositive of this case and, at a minimum, simplify the issues for the parties and the Court, the stay . . . is warranted in this case."); *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (staying case pending resolution of Supreme Court case presenting similar legal issues because "a court may also properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action"); *Carroll v. Wilson McColl & Rasmussen, Att'ys at L.*, 2009 WL 315610, at *2 (D. Idaho Feb. 9, 2009) (staying case pending state high court's review of appeal in related case to "serve the interests of judicial economy . . . by potentially narrowing the issues in this lawsuit and avoiding the expenditure of unnecessary costs, expenses, and time"); *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 545 F. Supp. 2d 1188, 1190 (D. Kan. 2008) (staying proceedings pending appeal of preliminary injunction to await appellate court's resolution of a legal issue that "would significantly advance the course of th[e] litigation" and best serve "the time and effort of the parties and the court"); *Bray v. QFA Royalties, LLC*, 2007 WL 2688858, at *1 (D. Colo. Sept. 12, 2007) (staying proceedings pending appeal of preliminary injunction because

appellate court's "determination of the legal issues inherent in [the] preliminary injunction decision will edify further proceedings on those same . . . claims for permanent injunctive relief").

## II. A Stay of Proceedings Pending the Resolution of *Slaughter* Will Promote Judicial Economy and Conserve the Parties' Resources in this Case

"In deciding whether to grant a stay, courts generally 'weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties.'" *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34, 39 (D.D.C. 2019) (quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732-33 (D.C. Cir. 2012)).

Here, a stay pending the resolution of *Slaughter* will promote judicial economy and conserve parties' resources because the Supreme Court's decision is likely to bear significantly on the claims in this case. *Slaughter* is plainly highly relevant to Plaintiff's ultra vires claim that his removal violated § 1111(c). In *Slaughter*, as here, the President removed a member of a partisan-balanced, multimember commission, without providing cause, in the face of a statutory for-cause removal restriction. *See* 15 U.S.C. § 41. *Slaughter* presents the question "[w]hether the statutory removal protections for members of" a partisan-balanced, multimember agency, the FTC, "violate the separation of powers and, if so, whether *Humphrey's Executor* [] should be overruled." *Slaughter*, 2025 WL 2692050. This case likewise concerns the government's argument that the statutory removal protections for members of a partisan-balanced, multimember agency violate the separation of powers, and Plaintiff has relied largely on *Humphrey's Executor* in arguing that such protections are constitutional.[2]

---

[2] Indeed, the issues here are even more similar to *Slaughter* than in *Storch* and *Samuels*, where the courts stayed the cases *sua sponte* pending resolution of *Slaughter*. *Storch* concerns the removal of inspectors general; the relevant statute expressly authorizes Presidential removal without cause, though plaintiffs in *Storch* claim that the President violated a statute purportedly requiring 30 days' notice to Congress. *See* 5 U.S.C. § 403 note; 5 U.S.C. § 403(b)(1)(A). *Samuels* concerns removal

*Slaughter* will also likely bear on Plaintiff's new equal protection claim. In assessing the viability of Plaintiff's claim that the constitution constrained the President's authority to remove a principal officer at the head of a partisan-balanced, multimember agency, this Court and the parties would benefit from the Supreme Court's latest word on the scope of the President's constitutional authority to remove such officers.

Finally, should the Supreme Court in *Slaughter* address the second question presented, "[w]hether a federal court may prevent a person's removal from public office, either through relief at equity or at law," *id.*, that would bear on whether Plaintiff can seek reinstatement in the event he succeeds on the merits of any of his claims.

By contrast, continued litigation while awaiting the Supreme Court's decision would be a wasteful and inefficient exercise and would impose hardship on Defendants. By amending his Complaint to add an equal protection claim, Plaintiff expanded the scope of the case when the parties were nearly finished briefing cross-motions for summary judgment. Defendants plan to move to dismiss the Amended Complaint, which will entail the parties filing dueling briefs regarding the legal viability of both the original ultra vires claim and the new equal protection claim. Furthermore, Plaintiff's counsel have informed undersigned counsel that if Plaintiff advances past the pleading stage on his equal protection claim, Plaintiff plans to seek discovery from Defendants regarding the circumstances of his removal. The Court should not address these legal issues, and potentially subject the government to intrusive discovery regarding the

---

of a Commissioner of the Equal Employment Opportunity Commission, whose authorizing statute contains no for-cause removal provision. *See* 42 U.S.C. § 2000e-4.

President's personnel decisions,[3] before the Supreme Court issues a decision that will likely be highly relevant to this case.

Further, imposing a temporary stay pending resolution of *Slaughter* would impose minimal, if any, hardship on any party. Because *Slaughter* will be argued next week, any stay will not be "immoderate in extent." *Landis*, 299 U.S. at 256. As Judge Chutkan explained when staying *Samuels* pending resolution of *Slaughter*, "[t]he court finds that the interest of judicial economy outweighs any prejudice to the parties from a brief delay." Minute Order, *Samuels* (D.D.C. Oct. 24, 2025). Plaintiff may argue that delay of resolution of this case would impose hardship given that his term expires December 31, 2026. Such a complaint would ring hollow given that Plaintiff significantly extended the timeline of resolution of this case in adding a new claim (which he could have included in his original Complaint) at a late stage when dispositive motions briefing on his original claim was nearly complete. That is particularly true because Plaintiff's counsel have indicated that Plaintiff intends to seek discovery on the equal protection claim, whereas the parties proceeded to resolution of the merits of the original ultra vires claim without discovery because the material facts were undisputed. *See generally* Defs.' SOMF Resp.

Finally, the Court should reject any suggestion by Plaintiff to press ahead with the equal protection claim while staying the ultra vires claim. There is no reason to give priority to a claim that Plaintiff waited to bring until seven months after his removal over a claim that he raised promptly. *Slaughter*, which will address the scope of the President's constitutional authority to remove principal officers heading multimember agencies, will likely be relevant to both Plaintiff's claim that his removal was barred by statute and his claim that his removal was barred by the

---

[3] For avoidance of doubt, Defendants do not agree that discovery would be appropriate on the equal protection claim and reserve the right to oppose any discovery.

9

constitution. And because Plaintiff intends to seek discovery on the equal protection claim, the hardship to the government of proceeding with that claim is greater than for the ultra vires claim.

## CONCLUSION

The Court should extend Defendants' deadline to respond to the Amended Complaint to 14 days after the Court rules on Defendants' request to stay the case. The Court should then grant this Motion and enter an order staying this case pending the Supreme Court's resolution of *Trump v. Slaughter*, No. 25-332.

Dated: December 5, 2025

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CHRISTOPHER R. HALL
Assistant Director, Federal Programs Branch

*/s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 532-3114
Fax: (202) 616-8470
Email: jeremy.s.newman@usdoj.gov

*Attorneys for Defendants*