**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALVIN BROWN, in his official capacity, | |
| *Plaintiff*, | Case No. 1:25-cv-01764 |
| vs. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; JENNIFER HOMENDY, in her official capacity as Chairman of the National Safety Transportation Board; NATIONAL SAFETY TRANSPORTATION BOARD, | |
| *Defendants*. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO STAY**

Plaintiff Alvin Brown agrees with Defendants that the Supreme Court's pending decision in *Trump v. Slaughter*, No. 25-332, is likely to bear significantly on the resolution of the first claim in Mr. Brown's Amended Complaint by addressing whether Congress can limit the President's authority to remove a commissioner of a multi-member commission and whether existing precedent on that issue should be overruled. Mr. Brown accordingly does not oppose staying proceedings as to the first cause of action in the Amended Complaint—that Defendants violated the statute setting forth the structure of the National Transportation Safety Board ("NTSB"), 49 U.S.C. § 1111, by removing Mr. Brown as an NTSB commissioner without any assertion of inefficiency, neglect, or malfeasance in office.

Mr. Brown's second cause of action, however—alleging that Mr. Brown's removal was racially discriminatory in violation of the Fifth Amendment—should not be stayed. The constitutional issue raised by the second cause of action (whether the President and the other

Defendants have violated the Constitution by removing Mr. Brown) is completely distinct from that raised by the first cause of action (whether Congress exceeded its authority by limiting the President's removal power). Even assuming Congress could not constitutionally restrict the President's removal power by statute, courts can review the President's exercise of that power for compliance with other provisions of the Constitution. Defendants do not and cannot explain how *Slaughter*'s examination of Congress's authority to limit the President's removal power could affect the distinct issues of whether the President is bound by the Fifth Amendment when he exercises that removal power or whether a Fifth Amendment violation occurred in this case.

There is accordingly no basis to stay proceedings on the second cause of action. Staying that claim would prolong the injury to Mr. Brown's Fifth Amendment rights and could potentially preclude him from ever vindicating those rights, should delay lead to loss of relevant evidence or extend this litigation beyond the end of Mr. Brown's term in office. Conversely, proceeding with the claim will impose no burdens on the government beyond those arising from the ordinary course of litigation. Indeed, unlike Mr. Brown's statutory claim, which can be resolved on briefing and argument alone, Mr. Brown's constitutional claim requires limited discovery, and thus further delaying it would undermine—not promote—efficient adjudication of this case.

The D.C. Circuit's recent decision in *Harris v. Bessent*, No. 25-5037, 2025 WL 3496737 (D.C. Cir. Dec. 5, 2025), which the Court directed Mr. Brown to address, does not change this analysis. In deciding that the Merit Systems Protection Board ("MSPB") and National Labor Relations Board ("NLRB") carry out executive functions that make for-cause removal restrictions an unconstitutional usurpation of presidential power, the *Harris* court's analysis did not touch on any constitutional issue relevant to Mr. Brown's Fifth Amendment claim. And as to Mr. Brown's statutory claim, while the *Harris* court applied *Humphrey's Executor* and its progeny to evaluate the constitutionality of the NLRB and MSPB removal restrictions without

awaiting the disposition in *Slaughter*, the NTSB differs significantly from those two agencies. In particular, whereas in *Harris* the panel majority concluded that neither the MSPB nor the NLRB fell within the ambit of *Humphrey's Executor* and its progeny and the case could therefore be resolved under existing precedent without regard to *Slaughter*, the NTSB's role as a body that merely investigates transportation accidents and makes non-binding recommendations places it firmly within the category of investigative or informative agencies for which removal restrictions are permissible under *Humphrey's Executor*—thus directly implicating the issues at stake in *Slaughter*. Moreover, *Harris* remains pending before the D.C. Circuit, with one plaintiff having already petitioned for rehearing en banc, the court having ordered appellants to respond, and the D.C. Circuit having previously acted en banc to reverse a ruling for the government on a motion to stay. The legal landscape thus remains in flux, and *Harris* should have no bearing on the otherwise straightforward conclusion that considerations of judicial efficiency and the interests of the parties warrant staying Mr. Brown's statutory claim while proceeding with his Fifth Amendment claim.

## BACKGROUND

Mr. Brown filed the original complaint in this case on June 4, 2025, challenging his removal as a violation of 49 U.S.C. § 1111(c). Compl., ECF No. 1. On December 2, 2025, Mr. Brown filed an amended complaint, adding a claim that his removal was racially discriminatory in violation of the Fifth Amendment. Am. Compl., ECF No. 25. On December 5, 2025, Defendants moved to stay both claims and extend their deadline to respond to the Amended Complaint until 14 days after this Court's resolution of the stay motion. Defs.' Motion to Stay, ECF No. 26.

On December 14, 2025, this Court issued an order granting the Defendants requested extension. The Court also directed Mr. Brown to respond to the Defendants' Motion to Stay by December 22, 2025, and to address whether the Court should stay proceedings on one count,

3

both counts, or neither count of Mr. Brown's complaint and whether the D.C. Circuit's decision in *Harris v. Bessent*, 2025 WL 3496737, "obviates the need to stay proceedings" in this case pending the Supreme Court's decision in *Slaughter*. Minute Order (Dec. 14, 2025).

## ARGUMENT

As observed in *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), the Court's power to stay a proceeding arises from "the power inherent to every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Granting a stay is an "exercise of judgment," and in making this judgment, courts must balance the "competing interests" of the parties. *Id.* at 254–55; *see Belize Soc. Dev. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012). "If there is even a fair possibility that the stay . . . will work damage" to the non-movant or another party, the "suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. When the government moves for a stay, it "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

Synthesizing the standard from *Landis*, this Court has often relied on three factors in assessing motions to stay, considering: "(1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay—that is, the harm to the moving party if a stay does not issue; and (3) whether a stay would promote efficient use of the court's resources." *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019); *see also Servs. Emps. Int'l Union Nat'l Indus. Pension Fund v. UPMC McKeesport*, No. 22-cv-249, 2022 WL 3644808, at *3 (D.D.C. Aug. 24, 2022) (applying same test). Because Defendants' motion focuses mainly on the issue of efficiency, we start with the third prong before moving to the parties' comparative harms and the relevance of *Harris*.

I.    **The Interest In Efficiency Counsels Against Staying Mr. Brown's Fifth Amendment Claim**

The Court's interest in "economy of time and effort" favors allowing Mr. Brown's Fifth Amendment claim to proceed without delay. *Landis*, 299 U.S. at 254. Defendants' stay motion relies on the Supreme Court's grant of certiorari in *Trump v. Slaughter*, No. 25-332, 2025 WL 2692050 (U.S. Sept. 22, 2025), where the Court will reconsider the constitutionality of for-cause removal protections for certain Senate-appointed officers. Defs.' Motion to Stay 5–9. Mr. Brown agrees that, while *Slaughter* is pending, this Court should stay Mr. Brown's claim alleging that his removal violated the NTSB's for-cause protections, 49 U.S.C. § 1111(c). But Defendants offer little reason why this logic should extend to Mr. Brown's Fifth Amendment claim. Instead, Defendants simply assert, with little elaboration, that because *Slaughter* will assess whether the "[C]onstitution constrain[s] the President's authority to remove a principal officer at the head of a partisan-balanced, multimember agency," the ruling in *Slaughter* might be relevant to the Fifth Amendment claim. Defs.' Motion to Stay 8. This argument, however, conflates the clearly distinct constitutional principles undergirding Mr. Brown's different claims.

At the heart of the Supreme Court's reconsideration in *Slaughter* of the *Humphrey's Executor* line of precedent is the question whether Congress can constitutionally limit the President's removal power. *See Humphrey's Ex'r v. United States*, 295 U.S. 602, 629-32 (1935). That question implicates the separation of powers between Article I and Article II of the Constitution. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) ("The question before us is whether this arrangement violates the Constitution's separation of powers."); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492–93 (2010) (explaining that the legality of for-cause removal protections turns on Congress's authority to constrain one of the President's Article II powers). The core constitutional question at issue in *Slaughter* is, therefore, whether

Congress can legally limit the President's exercise of his removal power by statute consistent with the separation of powers.

That issue is completely distinct from the constitutional issue implicated by Mr. Brown's Fifth Amendment claim—which deals instead with whether the President's exercise of the removal power is subject to other constitutional limits, including the Fifth Amendment, and whether those limits were violated in this case. Not even the broadest interpretation of the issues at play in *Slaughter* would encompass the distinct point that courts can review the President's exercise of his Article II removal authority to ensure it complies with the limits of the Constitution. The Supreme Court has consistently and unwaveringly affirmed that "the President's actions may . . . be reviewed for constitutionality," *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992), and nothing in *Slaughter* calls that principle into question. *See also, e.g.*, *Clinton*, 520 U.S. at 703 ("[W]e have long held that when the President takes official action, the Court has the authority to determine whether he has acted within the law."); *Trump v. United States*, 603 U.S. 593, 608 (2024) ("If the President claims authority to act but in fact exercises mere 'individual will' and 'authority without law,' the courts may say so." (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 655 (1952) (Jackson, J., concurring))). This principle applies "without regard to the particular constitutional provisions at issue," *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 820–21 (D.C. Cir. 2025) (quoting *Free Enter. Fund*, 561 U.S. at 491 n.2), including the protections of the Bill of Rights, *see Trump v. Vance*, 591 U.S. 786, 795 (2020) (referencing the trial of Aaron Burr in observing that "[t]he President . . . does not 'stand exempt from the general provisions of the Constitution,'" including the Sixth Amendment's compulsory process protections (quoting *United States v. Burr*, 25 F. Cas. 30, 33–34 (C.C.D. Va. 1807) (No. 14692D))). Mr. Brown's Fifth Amendment claim fits within this line

of precedents, not those implicated by *Slaughter.* In alleging race discrimination, Mr. Brown seeks to hold the President accountable to the Fifth Amendment's guarantee of equal protection under the law, not to vindicate Congress's power to restrain the President's exercise of his removal authority. Defendants' motion merges these two issues, and in doing so, muddles clearly distinct constitutional doctrines. Defs.' Motion to Stay 8. This Court need not do so as well.

Indeed, even if the Supreme Court were to hold in *Slaughter* that the President's removal power is plenary and subject to no congressionally imposed limits or constraints, that would not implicate the long-held principle that the President's exercise even of plenary constitutional powers is subject to judicial review for compliance with other constitutional provisions. *See, e.g.*, *Schick v. Reed*, 419 U.S. 256, 264, 266 (1974) (finding that although the President's pardoning power is "plenary," its use cannot otherwise "offend the Constitution"); *Andrews v. Warden*, 958 F.3d 1072, 1076 (11th Cir. 2020) ("So long as the President does not use the power to pardon to violate another provision of the Constitution, Congress and the Judiciary have no power to interfere with its exercise.").

Defendants also suggest that the decision in *Slaughter* could affect the remedies available to Mr. Brown should he prevail on either count in the Amended Complaint. Defs.' Motion to Stay 8. That argument does not warrant a stay of Mr. Brown's Fifth Amendment claim. The issue of what remedies are available for Mr. Brown is better reserved for a later stage of litigation. As Defendants themselves argue, proceeding with Mr. Brown's Fifth Amendment claim will require briefing by the parties as well as potential discovery, *id.*, all of which can proceed while *Slaughter* is under consideration. Delaying this process to await a determination of what remedies might be available at the end of litigation would not advance judicial efficiency but hinder it.

The Supreme Court has made clear that courts should only cautiously stay one plaintiff's case to await the outcome of another's. *Landis*, 299 U.S. at 255 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). And the burden for departing from "the beaten track" of litigation lies "heavily on the petitioner[]." *Id.* at 256. Courts thus routinely deny motions for a stay where they determine that pending appeals or parallel cases will not clearly affect the legal questions at issue in a claim. *See United States v. Honeywell Int'l, Inc.*, 20 F. Supp. 3d 129, 132 (D.D.C. 2013) (rejecting a motion for a stay where the government merely "broadly asserts that there is substantial overlap in legal and factual issues between this case and the related cases"); *Asylumworks v. Mayorkas*, No. 20-cv-3815, 2021 WL 2227335, at *5 (D.D.C. June 1, 2021) (writing that circumstances justifying granting a stay "should become rarer still where, as here, resolution of [other] litigation at some indefinite time in the future may not even provide any, let alone full, relief to plaintiffs in this case"); *Serv. Emps. Int'l Union*, 2022 WL 3644808, at *3 (denying a stay motion where other proceedings would not enable resolution of the claims at issue). This case is no different. The decision in *Slaughter* will have little to no bearing on Mr. Brown's Fifth Amendment claim and provides no reason to delay the discovery needed to assess the reason for Mr. Brown's removal from the NTSB. Economies of "time and effort" thus favor proceeding with this claim along the regular "beaten track." *Landis*, 299 U.S. at 254, 256.

## II.    Mr. Brown Will Be Harmed By A Stay Of His Fifth Amendment Claim

The harm to Mr. Brown from staying his Fifth Amendment claim would vastly outweigh any harm to the government from proceeding. Indeed, while Mr. Brown need not demonstrate irreparable injury, the violation of his constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury." *NAACP v. U.S. Dep't of Educ.*, 779 F. Supp. 3d

53, 67 (D.D.C. 2025) (quoting *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)). Delaying proceedings on that claim would prolong that harm and increase the risk that his Fifth Amendment rights might never be vindicated, as delay could result in the irreparable loss of relevant evidence. *See Clinton*, 510 U.S. at 707–08. Mr. Brown alleges he was unconstitutionally removed from his place on the NTSB for discriminatory reasons. Am. Compl. ¶¶ 58–63. Delaying proceedings on that claim would both risk the loss of necessary evidence and increase the risk that his claims might not be resolved before the end of his appointed term on the Board, which expires in December 2026. *See* Defs.' Resp. to Pl.'s Statement of Material Facts ¶ 1, ECF No. 19-2.

Defendants argue that the risk of delay should not weigh against a stay because Mr. Brown only recently amended his complaint to add his Fifth Amendment claim. Defs.' Motion to Stay 9. But Mr. Brown amended his complaint a mere five months after the original complaint was filed on June 4, 2025, and he acted promptly to amend his complaint in light of additional evidence that his removal was racially discriminatory.

The Court could easily ameliorate any risk of harm by staying only Mr. Brown's first cause of action. Doing so would allow Mr. Brown to pursue a remedy for the violation of his constitutional rights, even as his other options for statutory relief await the Supreme Court's ruling in *Slaughter*. Courts have regularly denied stays in cases where only some of the plaintiff's claims would be affected by pending appeals in other cases. *See, e.g.*, *Childress v. DeSilva Auto. Servs., LLC*, No. CIV 20-0136, 2020 WL 3572909, at *14 (D.N.M. July 1, 2020) (denying defendant's motion for a stay since "[t]he Supreme Court's [pending] decision in *Barr v. AAPC* is unlikely to invalidate *all* of [the Plaintiff's] claims or remove the Court's subject-matter jurisdiction" (emphasis added)); *Brnovich v. Biden*, No. CV-21-10568, 2022 WL

1166403, at *2 (D. Ariz. Apr. 20, 2022) (denying a stay after the Supreme Court granted certiorari in a similar case because "there are several claims at issue in this case that are not implicated" by the pending decision and thus a stay would "only minimally conserve judicial resources"). And staying only the first cause of action would ensure that Mr. Brown's Fifth Amendment claim does not have to play procedural catch-up with his statutory claim—allowing the new claim to develop while the other claim awaits clarification. The efficiency and harm analysis thus merge for this motion. And both point towards allowing the Fifth Amendment claim to proceed without a stay.

### III.    Defendants Will Face No "Hardship Or Inequity" If Mr. Brown's Fifth Amendment Claim Proceeds

Defendants cite nothing approximating the "clear case of hardship or inequity" needed to justify departing from the normal course of litigation. *Landis*, 299 U.S. at 255. Indeed, the only argument Defendants make for hardship on their behalf—that denying a stay will require them to proceed with ordinary litigation activity including briefs and limited discovery, Defs.' Motion to Stay 8—is one that courts have expressly rejected as a basis to stay a claim.[1] Merely being required to proceed through the regular course of litigation does not constitute a sufficient hardship. *See Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21; *Asylumworks*, 2021 WL 2227335, at *6 (denying a stay where the only hardship defendant demonstrated was "the expenditure of resources in proceeding with the litigation"). This principle holds especially true when the party moving for a stay is the United States, "the richest, most powerful, and best represented litigant to appear before [the Court]." *Ctr. for Biological Diversity*, 419 F. Supp. 3d

---

[1] Mr. Brown disagrees that discovery will be intensive. Recognizing that discovery will implicate presidential actions, Mr. Brown anticipates proceeding with discovery that is narrowly tailored to evidence supporting his constitutional claims.

at 21–22 (quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)). Meanwhile, further delay in settling Mr. Brown's claims may actually harm Defendant NTSB, since the NTSB's statutory functions are hindered when a Member is removed and the Board is not operating at full capacity.

The balance of the harms to the parties clearly favors proceeding with Mr. Brown's Fifth Amendment claim.

**IV.     The Panel Decision In *Harris v. Bessent* Should Not Affect The Analysis Of Defendants' Stay Request**

Finally, the D.C. Circuit's recent decision in *Harris v. Bessent*, No. 25-5037, 2025 WL 3496737 (D.C. Cir. Dec. 5, 2025), does not change any of the foregoing analysis. In *Harris*, the court found that, even under *Humphrey's Executor* and its progeny, the statutory provisions restricting removal of members from the MSPB and NLRB are unconstitutional because, in the panel majority's view, those agencies "wield substantial powers that are both executive in nature and different from the powers that *Humphrey's Executor* deemed to be merely quasi-legislative or quasi-judicial." 2025 WL 3496737, at *1. As a result, Congress could not validly restrict the President's ability to remove members of either body at will. *Id.* The *Harris* court applied *Humphrey's Executor* in light of the Supreme Court's holding in *Seila Law*, 591 U.S. 197, and determined that even assuming Congress may constitutionally limit the President's removal power in the kinds of circumstances blessed by *Humphrey's Executor* and subsequent cases— authority the Supreme Court will soon address in *Slaughter*—the powers wielded by the MSPB and NLRB placed both agencies beyond the ambit of any legitimate congressional limitation on that power. *Harris*, 2025 WL 3496737, at *6.

*Harris* should not impact this Court's analysis of Defendants' Motion to Stay. To begin with, *Harris* does not address the constitutional issues raised by Mr. Brown's Fifth Amendment

claim any more than *Slaughter* will. *Harris* focused on an agency-specific analysis of whether the powers exercised by the NLRB and MSPB are sufficiently "executive" that the removal restrictions are impermissible even under *Humphrey's Executor*. *See id.* at *7. The constitutional doctrine the court applied relates to the proper balance of power between Congress and the President and Congress's authority to constitutionally limit the President's removal power. *See id.* at *4–6. Just as in *Slaughter*, the *Harris* court's analysis of that separation-of-powers question does not bear on whether the President's exercise of his removal power must comply with the Constitution or whether it did so in this case. *See supra* Part I. Nor did *Harris* address the remedy for such a constitutional violation. *Harris*, 2025 WL 3496737, at *13.

Moreover, *Harris* is not controlling in analyzing the legality of the NTSB's for-cause removal restrictions, and the differences between that case and this one suggest that *Slaughter* will have greater relevance here than the panel majority thought it would have in *Harris.* Indeed, *Harris* supports the conclusion that the NTSB has qualitatively different functions and powers than either the MSPB or NLRB. The panel majority concluded in *Harris* that the NLRB engages in broad rulemaking, conducts administrative adjudications that delineate policy, prescribes and enforces binding remedies, exercises litigation authority, and administers major aspects of collective-bargaining negotiations and union elections. *Id.* at *8–10. As to the MSPB, the court found that it has at least some rulemaking authority and conducts adjudications with broad "finality, breadth of jurisdiction, and breadth of remedial authority." *Id.* at *10. Those findings led the panel majority to conclude that the NLRB and MSPB removal restrictions are unconstitutional even under *Humphrey's Executor* and its progeny, without regard to any further elaboration of that doctrine in *Slaughter*. In so finding, however, the *Harris* court explicitly distinguished agencies that perform a primarily "investigative and informative" role predicated

on making reports to Congress and investigating incidents that might inform legislative decision-making. *Id.* at *6. The NTSB clearly fits this description. As described in Mr. Brown's summary judgment motions, the NTSB's "primary function is to investigate accidents to make safety recommendations to prevent future accidents." Pl.'s Reply in Supp. of Pl.'s Mot. for Summ. J. & Opp'n to Defs.' Cross-Mot. for Summ. J. 3, ECF No. 23 ("2d Summ. J. Mot."). The NTSB's safety recommendations are non-binding. *Id.* at 4. And its primary function is in compiling and issuing reports sent to Congress and the public—reports which carry "no legal consequences of any kind." Mem. of Points & Auths. in Supp. of Pl.'s Mot. for Summ. J. 7, ECF No. 17-1 ("1st Summ. J. Mot.") (quoting *Joshi v. NTSB*, 791 F.3d 8, 11 (D.C. Cir. 2015)). The major thrust of the NTSB's powers thus parallels those of a legislative committee, and the few powers that are not so easily classified are best understood as tools used "merely [to] aid the NTSB" in the exercise of its powers of inquiry. 2d Summ. J. Mot. 5. The NTSB does not promulgate or enforce any safety regulations. 1st Summ. J. Mot. 16. And it relies heavily on other executive agencies, like the Department of Justice, to enforce its efforts to discharge this authority. 2d Summ. J. Mot. 6–7. Thus, whereas the panel majority in *Harris* concluded that the removal restrictions for the MSPB and NLRB would be unconstitutional regardless of whether *Humphrey's Executor* survives the ruling in *Slaughter*, the same cannot be said for the NTSB.

In any event, *Harris* is not sufficiently settled to alter the analysis of whether a stay is appropriate here. The plaintiff in *Harris* has already filed a petition for panel rehearing and rehearing en banc. Pet. for Panel Reh'g & Reh'g En Banc, *Harris v. Bessent*, No. 25-5037 (D.C. Cir. Dec. 12, 2025). On December 17, 2025, the court of appeals ordered appellants to respond within 15 days. Order, *Harris v. Bessent*, No. 25-5037 (D.C. Cir. Dec. 17, 2025). Given that *Harris* could be modified by further reconsideration by the D.C. Circuit, it would not serve the

13

interest in efficiency to treat it as authoritatively obviating a stay of Mr. Brown's first cause of action when the legal landscape remains so unsettled and further proceedings on that claim could be frustrated by pending legal developments. *See Hulley Enters. Ltd. v. Russian Fed'n*, 502 F. Supp. 3d 144, 155 (D.D.C. 2020) (finding a stay preserved efficiency where the litigation was at risk of being "upended by contrary findings" through likely upcoming appeals). Indeed, as the *Harris* court itself acknowledged, the constitutional doctrine it applied is subject to clarification or modification by the upcoming decision in *Slaughter*, *see Harris*, 2025 WL 3496737, at *6, as are questions as to the proper remedies for illegally removed officials, *id.* at *13, and whether the proper remedy for a constitutional violation would be severance of the unlawful removal restriction or severance of the agencies' executive functions, *id.* All of these questions could be addressed in *Slaughter*. *See, e.g.*, Tr. 8, *Trump v. Slaughter*, No. 25-332 (U.S. Dec. 8, 2025) ("[I]f you think [agencies are] wielding power that is inappropriate, why don't we sever that power[?]" (Sotomayor, J.)); *id.* at 21 ("[L]et's say you have an agency [where] . . . 85 percent is judicial . . . and a smaller percentage is some executive function that they do . . . . Is there a principle that you would sever out the smaller little tail on the dog and . . . allow the judicial functions to go . . . on?" (Roberts, C.J.)). *Harris*, in short, will be far from the last word.

## CONCLUSION

The Court should grant Defendants' Motion to Stay in part, staying Mr. Brown's first cause of action pending the Supreme Court's disposition of *Trump v. Slaughter*, 2025 WL 2692050. The Court should otherwise deny the motion for a stay and allow Mr. Brown's Fifth Amendment race-discrimination claim to proceed.

14

Dated: December 22, 2025

Respectfully submitted,

/s/ *Catherine M.A. Carroll*
Catherine M.A. Carroll (D.C. Bar No. 497890)
Cynthia Liao (D.C. Bar No. 90036947)
Elena Goldstein (D.C. Bar No. 90034087)
Victoria S. Nugent (D.C. Bar No. 470800)
Ross Snyder (D.C. Bar No. 90037922)*
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
(202) 316-9057
 ccarroll@democracyforward.org

Jon M. Greenbaum (D.C. Bar No. 489887)
**JUSTICE LEGAL STRATEGIES PLLC**
P.O. Box 27015
Washington, D.C. 20038
(202) 601-8678
jgreenbaum@justicels.com

 *Counsel for Plaintiff*

 * *Application for admittance pending*

15